746 P.2d 1006

Jack Alan BROWN, Petitioner–Appellant,

v.

**IDAHO STATE BOARD OF PHARMACY, Respondent.**

No. 16590.

Court of Appeals of Idaho.

Nov. 16, 1987.

548

Alan D. Wilson, Mountain Home, for petitioner-appellant.

Jim Jones, Atty. Gen., Daniel G. Chadwick, Deputy Atty. Gen., for respondent.

SWANSTROM, Judge.

Based upon the findings and conclusions of its hearing officer, the Idaho State Board of Pharmacy revoked the pharmacist's license of Jack Brown. Brown then petitioned for judicial review. The district court affirmed the Board's decision. Brown has appealed, assigning several errors to the Board's decision. The issues presented to us are whether the Board's findings are based upon substantial, competent evidence; and whether the Board's decision is arbitrary or capricious. We affirm.

A review of the proceedings below is in order. In January 1985, the Executive Director of the Board lodged a complaint against Brown, requesting the Board to determine whether Brown's pharmacist's license and uniform controlled substances registration should be suspended or revoked. The factual allegations of the complaint were: (1) that Brown had been convicted of possession of drug paraphernalia; (2) that Brown had admitted using marijuana; (3) that Brown had delivered a controlled substance in violation of Idaho's Controlled Substances Act; and (4) that Brown had sold and delivered a misbranded drug. The Board appointed a hearing officer who conducted a hearing on these charges.

The hearing officer admitted into evidence a certified copy of a judgment of conviction entered on Brown's plea of guilty to a criminal charge of possession of drug paraphernalia. Brown was not permitted to attack the validity of that conviction. The hearing officer found that Brown had been convicted of possession of drug paraphernalia. The hearing officer admitted into evidence, and took testimony regarding, a transcribed record of a taped interview between the Board's investigator and Brown. During this interview, Brown admitted that approximately twice a week he had used marijuana. However, at the hearing Brown testified that his actual use of marijuana was more sporadic than twice a week and that he was no longer using it. The hearing officer found that Brown was a "habitual" user of marijuana. The hear-

ing officer determined that Brown had not delivered a controlled substance, and that no action could be taken on this allegation. Finally, based on conflicting evidence, the hearing officer found that Brown had sold and delivered a misbranded drug. The hearing officer concluded that the Board had grounds to take disciplinary action against Brown's pharmacist's license but not against his controlled substances registration.

The Board adopted the hearing officer's findings and conclusions. By unanimous decision, the Board revoked Brown's pharmacist's license. Pursuant to I.C. § 67–5215, Brown sought judicial review of the Board's decision. The district court affirmed the Board's decision. On appeal, Brown asserts: (1) that the Board erred in finding that he had pled guilty to possession of drug paraphernalia, and in not allowing him to collaterally attack the conviction; (2) that the Board erred in finding that he habitually used marijuana; (3) that the Board erred in finding that he had sold and delivered a misbranded drug; and (4) that the Board's decision to revoke his license was arbitrary and capricious.

Preliminarily, we note that all final decisions of the Board are subject to judicial review pursuant to the Administrative Procedures Act. I.C. § 54–1728(4). In this appeal, we are asked essentially to make a second judicial review of the Board's decision. If that decision was correct, we then uphold it by affirming the order of the district court. In reviewing the Board's findings, we employ the test of reasonableness. Findings are deemed reasonable if the evidence supporting them is substantial when viewed in light of the entire record. *See Idaho State Insurance Fund v. Hunnicutt,* 110 Idaho 257, 715 P.2d 927 (1986); I.C. § 67–5215(g)(5). Further, we will not substitute our judgment for that of the Board as to the weight of the evidence on questions of fact. I.C. § 67–5215(g). In reviewing the Board's conclusions of law, we will determine whether they comport with constitutional and statutory provisions, and whether they are affected by errors of law. I.C. § 67–5215(g)(1), (4). Finally, in reviewing the Board's decision, we

will determine whether the Board's action is within its statutory authority, and whether the decision is arbitrary or capricious— that is, reached in disregard of the facts. I.C. § 67–5215(g)(2), (6).

## I. FINDINGS AND CONCLUSIONS

### A. Conviction

■ As noted, the Board adopted the hearing officer's finding that Brown had been convicted of possession of drug paraphernalia. There is no dispute with the Board's conclusion that such a conviction is a ground for discipline under I.C. § 54–1726(1)(c)(3), (f). Brown declares that he pled guilty without being advised of his right to counsel, and without being advised of the consequences of his plea. Therefore, he maintains that the judgment of conviction was inadmissible. At oral argument, Brown asserted that he was not collaterally attacking the conviction, but was questioning its admissibility. On the facts of this case, we fail to see the distinction. The issue raised by Brown is whether the judgment of conviction can be relied upon as valid. The Board and the district court determined that the judgment of conviction was not subject to collateral attack in an administrative agency action. For reasons explained below, we agree.

Idaho Code § 67–5210 governs the admissibility of evidence in contested cases before the Board. IDAPA 27, B., 9.10. We think that Brown's judgment of conviction for possession of drug paraphernalia would be admissible under that statute.

Moreover, we deem it important to identify the special nature of this present action. It is not a purely civil action between private litigants, nor is it a proceeding which may result in increased criminal sanctions against Brown. This is a disciplinary action brought by an agency of the state against its licensee. The sole purpose of the Board's action is to determine the qualification and fitness of Brown to engage in the practice of pharmacy. In a disciplinary proceeding, it is the Board's task to determine whether there are grounds for discipline and, if so, what disci-

plinary sanctions should be imposed. The Legislature has determined that the conviction of a felony or *any* violation of our state's drug laws is sufficient grounds for discipline. I.C. § 54-1726(1)(c), (f). The Board, like any administrative agency, is ill-equipped to consider whether a criminal conviction is valid. Thus, the Board must be allowed to rely upon the conclusive effect of a conviction. *See Thomas v. Dept. of Motor Vehicles,* 3 Cal.3d 335, 90 Cal. Rptr. 586, 475 P.2d 858 (1970); *Warmouth v. State Board of Examiners, Optometry,* 514 A.2d 1119 (Del.Super.Ct.1985); *In re Howard,* 297 Or. 174, 681 P.2d 775 (1984). We hold that the Board could rely upon the conviction.

We note that Brown could have attacked his criminal conviction in a proper proceeding brought in a proper forum. Certainly, Brown could have directly appealed his conviction. He might also have sought post-conviction relief. In *Thomas v. Dept. of Motor Vehicles, supra,* the California Department of Motor Vehicles had suspended a driver's license based solely upon two convictions for driving under the influence. The motorist attempted to collaterally attack the prior conviction on constitutional grounds. The California Supreme Court ruled that the motorist could not attack his prior conviction in the proceeding before the department, and that the department could rely upon the conviction. The Court noted, however, that the motorist could attack the conviction in a proper proceeding, brought in a proper forum, such as was done in the similar case of *Hasson v. Cozens,* 1 Cal.3d 576, 83 Cal.Rptr. 161, 463 P.2d 385 (1970). In *Hasson,* a collateral attack of a prior drunk driving conviction was upheld at the time Hasson pled no contest to a second charge of drunk driving. The Department of Motor Vehicles was barred from relying upon the prior conviction as grounds for suspension of Hasson's driver's license.

■ We think this is the correct approach. An administrative agency is not the proper forum for challenging the validity of a criminal conviction. Procedurally, a person, whose criminal conviction is being used as grounds for agency action, may ask the agency to stay its proceedings while he immediately petitions the district court to set the conviction aside. This procedure will protect the individual's interests while promoting efficient administrative action.

## B. Habitual Use

We now examine the evidence of Brown's marijuana use to determine whether the Board's finding that he had used marijuana on a fairly regular basis is reasonable. The evidence of use consisted largely of Brown's admissions to the Board's investigator. Brown admitted to the investigator that he had used marijuana. When asked to give a more specific answer, Brown stated that he had used marijuana approximately twice a week. The investigator commented that this was quite frequent use. Brown then explained that he had used marijuana more than once a year but perhaps not quite as often as twice a week. Brown further mentioned that one-fourth ounce of marijuana would supply his need for a considerable period of time. He also noted that a search of his person and home by police officers showed that he was not in possession of marijuana just prior to the date of the interview. Finally, Brown had submitted to a urinalysis test as requested by the Board's investigator. The test was negative.

■ Based upon this evidence, the Board found that Brown regularly used marijuana. From our review of the entire evidence on this point, we determine that the Board's finding is supported by substantial evidence. We hold that the finding is reasonable. This brings us to the question of whether the Board's conclusion that Brown is a "habitual" user of marijuana is affected by error of law.

The Board concluded that Brown's use of marijuana was grounds for discipline because it constituted "unprofessional conduct as that term is defined by the rules and regulations of the board." I.C. § 54-1726(1)(a). Under the State Board of Pharmacy regulations, IDAPA 27–9, 446.g, "being addicted or *habituated* to the use of

alcohol or controlled substances" is an act or practice declared to be unprofessional conduct. (Emphasis added.) Apparently, there is a recognizable difference between "being addicted" and "being habituated." We now explore that difference.

The Board's regulations do not define either term. However, the term "addict" as defined in IDAPA 27-20, 227.a.ii, "means any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addition [sic]." The word "addiction," in reference to drug use, is defined in STEDMAN'S MEDICAL DICTIONARY 21 (4th ed. 1976) as: "[H]abituation to the use of a drug, the deprivation of which gives rise to symptoms of distress, abstinence or withdrawal symptoms, and an irresistible impulse to take the drug again." In DORLAND'S MEDICAL DICTIONARY 29 (26th ed. 1981), drug "addiction" is defined as:

[A] state of periodic or chronic intoxication produced by the repeated consumption of a drug, characterized by (1) an overwhelming desire or need (compulsion) to continue use of the drug and to obtain it by any means, (2) a tendency to increase the dosage, (3) a psychological and usually a physical dependence on its effects, and (4) a detrimental effect on the individual and on society.

In contrast to "addiction," "habituation" is defined as follows.

[T]he gradual adaptation to a stimulus or to the environment; ... a condition resulting from the repeated consumption of a drug, with a desire to continue its use, but with little or no tendency to increase the dose; there may be psychic, but no physical dependence on the drug, and detrimental effects, if any, are primarily on the individual.

DORLAND'S MEDICAL DICTIONARY 576 (26th ed. 1981). It has also been defined as "the process of forming a habit, referring generally to psychological dependence on the continued use of a drug to maintain a sense of well-being, which can result in drug addiction." STEDMAN'S MEDICAL DICTIONARY 611 (4th ed. 1976). Thus, "being habituated to the use" of a controlled substance means that a person, out of desire not compulsion, has so repeatedly used a controlled substance that such use has become habit or routine, but not addictive.

Here, Brown's admission reveals that he had a desire to use marijuana. He has admitted using marijuana frequently—approximately twice a week. Such repeated use indicates the process of forming a habit or routine. We hold that Brown was habituated to the use of marijuana. Therefore, we determine that the Board's conclusion of law is not erroneous.

## C. Misbranded Drug

We now determine whether the Board's finding that Brown had delivered a misbranded drug is reasonable, and whether the Board's conclusion that such action was grounds for discipline is correct. Brown has also questioned whether the hearing officer erred in admitting hearsay evidence on the sale and delivery issue. We first address the hearsay argument.

Brown objected on grounds of hearsay to a police officer's testimony concerning a conversation he had overheard between an informant and a "drug dealer" while the informant was wearing a concealed transmitter. In the conversation, the dealer said he could obtain "speed" for the informant from a pharmacist friend. The Board maintains that the statement is not hearsay because it was not offered to prove the truth of the assertion. Rather, it was merely offered as circumstantial proof of the dealer's state of mind. Brown objected to the statement, claiming it was inadmissible hearsay which tended to imply that Brown was the dealer's supplier. The hearing officer admitted the evidence on the basis that it was not being offered to prove the truth of the assertion.

As noted, I.C. § 67-5210 governs the rules of evidence for contested cases before the Board. That statute incorporates the rules of evidence used in nonjury trials. At the time of this hearing, the present Idaho Rules of Evidence had not been

adopted. Thus, we will consider the admissibility of this statement under the rules in effect at the time of the hearing.

■ The relatively narrow scope of the hearsay rule is focused upon assertive statements or acts, made or committed out of court, and offered to prove the truth of the assertion. As noted, the Board offered the dealer's statement, not to prove its truth, but merely to show that the statement was made, thus evidencing the dealer's state of mind. For such purpose the statement is nonhearsay and is admissible if relevant to the case. *See generally* G. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER 128, 138–39 (2d ed. 1972). The dealer's statement was logically relevant to the facts of this case. It tended to prove that the dealer had intended to obtain a drug, in the guise of "speed," for the informant. This helped put in perspective the subsequent conduct of the dealer. Thus, the evidence was admissible and Brown's objection was properly rejected.

We now turn to a discussion on the Board's finding and conclusion. The entire record on this matter reveals the following facts. On December 12, 1984, the dealer told the informant that he would obtain "speed" from a pharmacist friend for the informant. The dealer entered the store where Brown worked as a pharmacist. An undercover police officer followed the dealer into the store. The dealer had nothing in his hands when he entered the store. The dealer walked to the end of an aisle near the pharmacy counter. The police officer remained at the other end of the same aisle. At this point the testimony diverges.

The dealer testified as follows. He went to the shelf where some "Haysma"—an over-the-counter hay fever medication—was located. He picked up one large box of Haysma and proceeded to the pharmacy counter to purchase it. He waited while the pharmacist (Brown) helped some other customers. When Brown was free, the dealer approached him at the pharmacy counter and made his purchase. The dealer then proceeded to leave the store.

While walking down an aisle, the dealer took the Haysma box from the store's red and white bag, opened the Haysma box and bottle, and transferred the contents to a large, empty, unlabeled medicine bottle he had brought from home. The dealer then discarded the Haysma box and bottle, the sales receipt, and possibly the bag. He did not recall where he discarded these items. The dealer exited the store, entered his car, and gave the informant the unlabeled bottle containing Haysma.

The police officer's testimony provided the following description of the events. He testified that he watched the dealer walk up the aisle toward the pharmacy counter. The officer stated that the dealer kept his hands in his pockets. The officer did not see the dealer remove anything from any shelf. The officer noted that the dealer stood around for a few minutes, watching Brown who was talking with some customers. When the customers left, the dealer approached Brown and they engaged in conversation for several minutes. Brown then left the pharmacy counter, his hands empty, and went to the registers at the front of the store. Brown rummaged under one of these registers for a moment, then returned to the pharmacy counter. His hands were still empty. Brown and the dealer then spoke for a few more minutes. The officer then observed that a red and white bag was on the pharmacy counter. The officer was not sure how it got there. The officer indicated that the dealer could have purchased something because the dealer's back was towards the officer and the officer could not see the dealer's hands. The dealer picked up the bag and the officer watched as he exited the store with the bag. When the police met with the informant, the informant gave them a red and white bag which contained a large, unlabeled bottle filled with white pills.

Brown testified that he did not recall this particular incident. He stated, however, that Haysma was kept on a shelf near the pharmacy counter. He also noted that his pharmacy stocked the type of container which the dealer had given to the informant. The hearing officer found that the

weight of the evidence indicated that Brown had participated in selling and delivering Haysma in an unmarked container. The hearing officer concluded that the sale and delivery of a misbranded drug was prohibited by I.C. § 37–115. The hearing officer further concluded that such conduct provided grounds for discipline under I.C. § 54–1726(1)(a), IDAPA 27–9, 446.j, and I.C. § 54–1726(1)(f). As noted, the Board unanimously adopted this finding and conclusion.

■ Our review of the above facts persuades us that the Board's finding is reasonable. There is conflicting evidence; however, the hearing officer gave more weight to that evidence which showed misconduct. The Board agreed. We are not persuaded to substitute our judgment for the Board's on the weight of this evidence. We determine that there is substantial evidence to support the Board's finding.

The Board concluded that Brown's sale and delivery of the unmarked bottle of pills was a violation of I.C. § 37–115, which prohibits the sale or delivery of a misbranded drug. According to I.C. § 37–127(b), a drug is deemed misbranded "unless it bears a label containing (1) the name and place of business of the manufacturer, packer, or distributor; and (2) an accurate statement of the quantity of the contents in terms of weight, measure or numerical count...." Thus, the sale and delivery of Haysma in the unmarked container violated the prohibition against selling and delivering a misbranded drug. This violation is grounds for discipline under I.C. § 54–1726(1)(a), (f). Therefore, we determine that the Board's conclusion is not erroneous.

## II. DECISION TO REVOKE

Brown contends that the Board's decision to revoke his license was arbitrary or capricious. Based upon the findings and conclusions, the Board unanimously decided to revoke Brown's pharmacist's license. We will review this decision to determine whether it was made within the Board's statutory authority, and whether it was arbitrary or capricious.

Section 54–1702 of the Idaho Pharmacy Act provides that the practice of pharmacy in this state is subject to regulation and control, and that only qualified persons are permitted to engage in the practice. Idaho Code § 54–1706 establishes the State Board of Pharmacy, and grants the Board "all of the duties, powers, and authority ... necessary to the enforcement of ... [the Idaho Pharmacy Act]." Under I.C. § 54–1728(1), the Board may, upon the finding of the existence of grounds for discipline of any person holding a license, suspend or revoke the offender's license. Clearly, the Board has statutory authority to revoke Brown's license.

■ The Board had ample factual grounds for disciplining Brown. The Board was faced with facts indicating that Brown was engaged in the illegal use of a controlled substance, and in selling and delivering a misbranded drug. Such actions reflect that Brown is unfit and unqualified for the practice of pharmacy. The Board reached its decision after considering all of the facts present in this case. The Board's decision to revoke was not made in disregard of those facts. We hold that the Board's decision was not arbitrary or capricious. Accordingly, we affirm the order of the district court upholding the Board's decision to revoke Brown's pharmacist's license. Costs to respondent, Board. Neither side has requested attorney fees on appeal.

WALTERS, C.J., concurs.

BURNETT, Judge, specially concurring.

I join in the Court's opinion but write separately to emphasize that this case arose, and was heard, prior to adoption of the Idaho Rules of Evidence. Accordingly, our discussion of the "state of mind" issue is not intended to be an interpretive gloss upon those Rules. As noted by the committee which drafted the Rules, the federal courts have been divided on the question whether one person's state of mind may be used to prove another person's future conduct. The answer to that question under

the Idaho Rules awaits another case. *See* REPORT OF IDAHO RULES OF EVIDENCE COMMITTEE (1984) at C 803 p. 4.