836 P.2d 523

**Philip M. KRUEGER, M.D., License No. M-3549, Petitioner-Respondent and Cross Appellant,**

v.

**BOARD OF PROFESSIONAL DISCIPLINE OF THE IDAHO STATE BOARD OF MEDICINE, Respondent-Appellant and Cross Respondent.**

No. 19323.

Supreme Court of Idaho, Boise, February 1992 Term.

July 8, 1992.

Rehearing Denied Sept. 30, 1992.

Uranga, Uranga & Bieter, Boise, for respondent-appellant and cross respondent. Jean R. Uranga argued.

Merrill & Merrill, Chartered, Pocatello, for petitioner-respondent and cross appellant. David C. Nye argued.

REINHARDT, Judge pro tem.:

This is an appeal from a Decision on a Petition for Judicial Review of the decision of the Board of Professional Discipline of the Idaho State Board of Medicine (hereaf-

ter "Board") concerning the license of Philip M. Krueger, M.D., to practice medicine. The Board appeals from the district court's decision remanding the case to the Board for further findings and conclusions as to patients A, B, C, D and E, and reversing the Board's decision as to patient H. Dr. Krueger cross-appeals, contending that the Board used unconstitutionally vague grounds for revoking his license, violated his constitutional right to due process, and erred in not considering a jury verdict exonerating him of malpractice in the physician-patient relationship with patient F.

On November 8, 1988, the Board initiated disciplinary proceedings against Dr. Krueger for violations of I.C. § 54–1814(7), which allows discipline of a physician based upon:

The provision of health care which fails to meet the standard of health care provided by other qualified physicians in the same community or similar communities, taking into account his training, experience and the degree of expertise to which he holds himself out to the public.

At issue was Dr. Krueger's conduct as it related to eight patients (patients A–H), with alleged incidents of breach of the standard of care including the following:

Patient A: Failure to adequately monitor an infant's condition during the birthing process, and a lack of preparation in transferring the mother and infant to a hospital once evidence of meconium aspiration was available.

Patients B, C, D and E: Performing elective surgeries while incapacitated by a wrist injury which necessitated the surgeries be performed with one hand.

Patient F: Use of forceps during delivery without knowing the exact position of the infant's head.

Patient G: No violation of the standard of care was found.

Patient H: Delay in performing a C-section. The Board also found that Dr. Krueger used contraindicated medications. Whether or not Dr. Krueger had adequate notice that the Board was challenging his use of medication is one of the issues presented on appeal.

Following a five-day hearing in which extensive expert testimony was admitted on the subject of whether a violation of the standard of care had taken place, a designated hearing officer made a decision and report to the Board on November 30, 1989, with proposed findings of fact, conclusions of law and order.

On January 30, 1990, after conducting an independent review of the record and reviewing the recommendations of the hearing officer, the Board issued its findings of fact, conclusions of law and final order. The Board found that Dr. Krueger had violated the community standard of care in his treatment of patients A, B, C, D, E, F and H. The Board's order revoked Dr. Krueger's license, but stayed revocation so long as Dr. Krueger complied with certain terms and conditions outlined by the Board. Dr. Krueger appealed that order to the district court.

On appeal, the district court remanded the case to the Board for further findings and conclusions on whether "a consensus of expert opinion" supported the Board's findings that Dr. Krueger had violated the community standard of care as to patients B, C, D and E. Furthermore, the court, upon finding that there was a variation between the allegations contained in the complaint and the evidence presented at the hearing, directed the Board to strike its conclusion that Dr. Krueger's management of the case of patient H did not meet the standard of care provided by other qualified physicians in the Boise community, and directed the Board to reconsider its decision to discipline Dr. Krueger. The district court also found that the jury verdict absolving Dr. Krueger of liability as to patient F had no evidentiary or preclusive effect, and that the Board was correct in refusing to consider that verdict. Both the Board and Dr. Krueger petitioned for a rehearing, which petitions were denied. The district court did, however, modify its original decision to require the Board to also reconsider its finding as to patient A to determine whether there was a consensus of expert opinion that Dr. Krueger

failed to meeting the community standard of care.

## I.

## UNCONSTITUTIONAL VAGUENESS ARGUMENT

Krueger argues that I.C. § 54–1814(7) is unconstitutionally vague on its face because it does not define what conduct constitutes a breach of the local community standard of care. As applied to professional disciplinary proceedings, the void for vagueness concept has been addressed by this Court, which found a statute to be unconstitutionally vague

> ... when its language does not convey sufficiently definite warnings as to the proscribed conduct, and its language is such that men of common intelligence must necessarily guess at its meaning.

*Wyckoff v. Board of County Commrs. of Ada County,* 101 Idaho 12, 15, 607 P.2d 1066, 1069 (1980) (cited in *H & V Eng'g v. Board of Professional Engrs.,* 113 Idaho 646, 747 P.2d 55 (1987)).

■ We agree with the district court's finding that this statute is not unconstitutionally vague on its face, even though the Board has not promulgated any regulations to further define or explain the statute. The language of the statute is similar to the well-accepted definition of medical malpractice contained in I.C. § 6–1012, and is merely a codification of already existing case law. *Bolen v. United States,* 727 F.Supp. 1346 (D.Idaho 1989); *LePelley v. Grefenson,* 101 Idaho 422, 614 P.2d 962 (1980); *Swanson v. Wasson,* 45 Idaho 309, 262 P. 147 (1927). The finding of the district court that I.C. § 54–1814(7) is not unconstitutionally vague on its face is therefore affirmed.

■ Dr. Krueger also argued that the statute was vague as applied, relying on this Court's decisions in *H & V Eng'g v. Board of Professional Engrs.,* 113 Idaho 646, 747 P.2d 55 (1987) and *Tuma v. Board of Nursing,* 100 Idaho 74, 593 P.2d 711 (1979). The district court held that to avoid a finding of vagueness as applied, *Tuma* and *H & V* required the Board to find from

the evidence that the standard it adopted was one recognized by a "consensus of expert opinion."

In *Tuma,* a registered nurse sought review of an order of the Board of Nursing which suspended her license under I.C. § 54–1422(a)(7), for interfering with a doctor-patient relationship by discussing alternative treatment methods with a terminally ill cancer patient. The primary issue on her appeal was whether her due process rights were satisfied by a statute which authorized the suspension of her professional license to practice nursing on the grounds of "unprofessional conduct" in the absence of statutes or regulations specifically defining the conduct which would be deemed unprofessional.

This Court recognized in *Tuma,* that the right to practice one's profession is a valuable property right and that a state cannot exclude a person from the practice of his profession without having provided the safeguards of due process. 100 Idaho at 77, 593 P.2d at 714 (citing *Schware v. Board of Bar Examiners,* 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), and *Ferguson v. Board of Trustees of Bonner County, School Dist. No. 82,* 98 Idaho 359, 364, 564 P.2d 971, 976 (1977)). In *Tuma,* this Court applied a two-pronged test to the void for vagueness doctrine, noting that:

> Not only are those whose activities are proscribed entitled to definite standards by which they may be guided, but it is equally important that the standards are there to guide those officers or agencies required to pass judgment on licensees called to account for their conduct.

100 Idaho at 80, 593 P.2d at 717. We found that the statutory definition of "unprofessional conduct" in question did not adequately warn Tuma of the possibility that her license would be suspended if she engaged in conversations with a patient regarding alternative procedure.

In *Tuma* and *H & V,* we held that the administrative boards could not rely merely on their own expertise, experience and collective knowledge, but must articulate clear standards which will warn the professional as to which acts are unlawful. We

find the facts of this case distinguishable from those in *Tuma* and *H & V*. In both of those cases the respective boards did not rely on the testimony of expert witnesses with regard to the professional standards in question, and instead relied solely on the expertise of the members of the board. In this case extensive expert testimony by local physicians was presented from which the Board made its determination that Dr. Krueger's conduct did not meet the local standard of care. It should also be noted that in *Tuma* we recognized that there had been no allegation that Tuma was unfit to practice nursing (citing the California case of *Morrison v. State Bd. of Educ.*, 1 Cal.3d 214, 230–31, 82 Cal.Rptr. 175, 187–88, 461 P.2d 375, 387–88 (1969), in which a teacher's license revocation for unprofessional conduct was saved from a holding of vagueness by a judicial interpretation construing the statutory language to constitute a ban on conduct which would indicate an unfitness to teach). In the instant case the Board did call into question Dr. Krueger's fitness to practice medicine.

*Tuma* may be further distinguished in that it was not the Board of Nursing which found Tuma guilty of unprofessional conduct, but a hearing officer who "was not possessed of that expertise born of 'personal knowledge and experience' which would have enabled him, albeit after the fact, to determine whether Tuma had indeed acted unprofessionally." 100 Idaho at 81, 593 P.2d at 718. The Board of Nursing's only function was to approve or disapprove the decision of the hearing officer who had only a legal background. In this case the finding that Dr. Krueger had violated the community standard of care came directly from the Board of Professional Discipline of the Idaho State Board of Medicine, which was comprised of members of the medical community who did possess expertise born of personal knowledge and experience. The utilization of this experience, technical competence, and specialized knowledge in the evaluation of evidence is specifically permitted by I.C. § 67–5210(4).

The hearing officer and the district court both relied on this Court's holdings in *Tuma* and *V* to support a requirement

of a "consensus of expert opinion." We believe, however, that the district court's reliance on the consensus language from the *Tuma* opinion was misplaced. In *Tuma*, this Court was addressing the authority which was conferred upon a board to promulgate rules and regulations further defining unprofessional conduct when it quoted the "consensus" language from *Reyburn v. Minnesota State Bd. of Optometry*, 247 Minn. 520, 78 N.W.2d 351 (1956). *Reyburn* was cited for the proposition that in promulgating rules, a board could "declare as 'unprofessional' *only* such conduct as fails to conform to those standards of professional behavior which are recognized by a consensus of expert opinion as necessary for the public's protection." (Emphasis in original). 100 Idaho at 78, 593 P.2d at 715. *Reyburn* goes on to say that "... the antecedent adoption by the board of rules and regulations defining what constitutes 'unprofessional conduct' is not a prerequisite to the suspension or revocation of a practitioner's license for 'unprofessional conduct.' *Bell v. Board of Regents*, 295 N.Y. 101, 65 N.E.2d 184, 163 A.L.R. 900, with Annotation at page 909." 78 N.W.2d at 357. *Reyburn* did not hold that a board was prohibited from disciplining a person for "unprofessional conduct" unless it first found that the conduct was considered inappropriate by a consensus of expert opinion. It should also be noted that the *Reyburn* court held the statute in question was not unconstitutionally vague:

> Since "unprofessional conduct" is of itself, without amplification, a sufficiently definite ground upon which the board may revoke or suspend a license, it cannot reasonably be maintained that such a statutory provision becomes invalid simply because the legislature has expressly defined certain acts as unprofessional conduct but has left it to the board to determine what additional and other acts and omissions are "unprofessional." It would be unreasonable to hold that, when the legislature prescribes only the basic standard of "unprofessional conduct," the statute is sufficiently definite to be valid but that it is invalid when the

legislature attempts a partial enumeration of what constitutes such conduct. The statutory phrase "among other things" coupled to the enumeration of specific or illustrative acts of unprofessional conduct is indicative merely of a legislative intent not to occupy the entire field by express definition but to delegate to the board the duty of ascertaining what other or additional acts violate the profession's acceptable standards.

78 N.W.2d at 356.

In *Tuma* we cited *Ward v. Oregon State Bd. of Nursing,* 266 Or. 128, 510 P.2d 554 (1973), for the proposition that "one of the characteristics of a profession is its responsibility to formulate standards of conduct for its members." 266 Or. at 134, 510 P.2d at 557. While it is not disputed that the Board in this case has the power to promulgate rules and regulations, we also note that the *Ward* court stated, "It is to be expected that the legislature would intend to vest in a board made up of members of the profession a certain amount of leeway in applying those standards in disciplinary proceedings." 510 P.2d at 557.

We are convinced that Dr. Krueger did have adequate notice of the conduct which could subject him to discipline. The statute in question here is distinguishable from the "unprofessional conduct" statute in *Tuma* and the "misconduct" statute in *H & V,* in that it merely codified well-established concepts of medical malpractice. In view of the similarity between the disciplinary statute and the accepted definition of medical malpractice, we believe the language of I.C. § 54–1814(7) was sufficient to notify medical practitioners that they could be disciplined for failure to conform to the community standards. We therefore reverse the district court's finding that the Board's decision as to patients A through E would be unconstitutionally vague in the absence of a finding that the decision was supported by a consensus of expert opinion. We also reverse the order of the district court remanding to the Board the decisions as to patients A through E.

## II.

## PROCEDURAL DUE PROCESS ARGUMENT

With regard to the treatment of patient H, the Board found clear and convincing evidence that the use of sensorcaine was contraindicated, that Dr. Krueger's use of pitocin was inappropriate, and that his management of the delivery of patient H did not meet the standard of care provided by other qualified physicians in the Boise community.

The Board appeals the district court's holding which overturned the Board's decision regarding patient H, based upon inadequate notice of charges. The Board argues that Dr. Krueger was fully apprised by the complaint that his handling of the delivery of patient H was in dispute, and notes that Krueger presented a defense to the allegations that his use of the medicines was contraindicated. Krueger maintains that the complaint only provided notice that there was alleged to have been a delay in performance of the C-section, and that because of lack of notice he was unable to adequately respond to the charges that he had inappropriately administered the medications.

We agree with the district court's finding that there was a deviation between the allegations and the proof as to patient H which violated Dr. Krueger's constitutional right to procedural due process. The complaint alleged that:

> On or around April 15, 1986, at St. Alphonsus Regional Medical Center in Boise, Idaho, Respondent performed a c-section delivery of the baby of patient [H] ... There was an inappropriate delay in performing the c-section in light of evidence of fetal distress.

Under the Idaho Administrative Procedures Act, the Board was required to set forth a short and plain statement of the ground of complaint and a statement of the facts or things done or omitted to be done. IDAPA 22.G.8.f. We find that the complaint as to patient H failed to adequately notify Dr. Krueger that the Board was charging him with administering inappro-

priate medication which caused the fetal distress, and that he lacked a fair opportunity to gather witnesses and prepare a defense. We therefore affirm the district court's direction to strike the Board's conclusion that Dr. Krueger's management of the case of patient H did not meet the standard of care provided by other qualified physicians in the Boise community.

## III.

## ADMISSIBILITY OF JURY VERDICT

Two weeks prior to the hearing officer's submission of his proposed decision to the Board, a jury in an independent action concluded that Dr. Krueger was not liable for malpractice in his care of patient F. Krueger moved the Board to receive evidence regarding that jury verdict and to consider the verdict in its evaluation of Dr. Krueger's conduct as to patient F. The Board denied that motion, and the district court held that the Board acted correctly in not considering the verdict as evidence or giving the verdict any preclusive effect in the disciplinary proceeding.

Krueger cited *Brown v. Idaho State Board of Pharmacy*, 113 Idaho 547, 746 P.2d 1006 (Ct.App.1987), for the proposition that a judicial judgment is, under I.C. § 67–5210, admissible in an administrative proceeding. In *Brown*, an administrative disciplinary action was brought against a pharmacist who had entered a guilty plea to a criminal charge of possession of drug paraphernalia. That criminal conviction was the *basis* of the disciplinary proceeding under I.C. § 54–1726(1)(c), which provides that the conviction of a felony or any violation of a state drug law is sufficient grounds for discipline and thus is distinguishable on its facts.

Krueger maintains the jury concluded that he had met the local community standard of care as to patient F and that the verdict was a judicially cognizable fact which the Board should have considered. While the verdict was favorable to Dr. Krueger, it is unclear whether the jury felt he had not violated the standard of care. The question which the jury answered negatively asked: "Was the defendant, Philip M. Krueger, negligent, which negligence was a proximate cause of the plaintiff's [name omitted] injuries?" The negative answer could have indicated that the plaintiff had failed to prove that she suffered injuries or that the jury believed the negligence of Krueger was not the proximate cause of the injuries. The verdict was not relevant under I.R.E. 401 as it did not have a tendency to make the existence of any fact that was of consequence to that proceeding more probable or less probable. We also agree that the jury verdict is not entitled to any preclusive effect, for the reason that the Board was neither involved in the independent malpractice action nor had a special relationship which would make it appropriate to bind them by the verdict. We therefore affirm the district court's finding that the Board was correct in refusing to consider the verdict.

We reverse the district court's order remanding the decisions as to patients A, B, C, D and E. We affirm the district court's findings as to patients F and H.

Because we find that the Board did not act without a reasonable basis in fact or law, no attorney fees will be granted under I.C. § 12–117.

BISTLINE and JOHNSON, JJ., and SCHILLING and TROUT, JJ. pro tem., concur.