866 P.2d 177

Lawrence RINCOVER, Plaintiff–
Appellant,

v.

STATE of Idaho, DEPARTMENT OF
FINANCE, SECURITIES BUREAU,
Defendant–Respondent.

No. 20156.

Supreme Court of Idaho,
Boise, Sept. 1993 Term.

Nov. 29, 1993.

Rehearing Denied Feb. 3, 1994.

Bauer and French, Boise, for plaintiff-appellant. Randal J. French, argued.

Larry EchoHawk, Atty. Gen., Marilyn T. Scanlan, Deputy Atty. Gen., Boise, for defendant-respondent. Marilyn T. Scanlan, argued.

JOHNSON, Justice.

This case concerns the denial of an application for registration of a securities salesperson. We conclude that the denial of the application violated the applicant's right to due process of law, because: (1) the notice to the applicant of the reasons for the denial prior to a hearing did not adequately notify the applicant of the reasons upon which the denial was based after a hearing, and (2) the provisions of I.C. § 30–1413(7) referring to

"dishonest and unethical practices" are unconstitutionally vague as applied to the applicant's conduct.

## I.

### THE BACKGROUND AND PRIOR PROCEEDINGS.

Lawrence Rincover was a registered securities salesperson for several years before 1990. In early 1990, the Idaho department of finance (the department) conducted an investigation of various matters concerning Rincover's conduct as a securities salesperson, including loans he obtained from clients named Vincent (the Vincent matter) and investment advice he gave to a client named Totorica (the Totorica matter). In July 1990, Rincover discontinued his employment as a securities salesperson in Idaho. In 1991, Rincover applied to become a registered securities salesperson in Idaho again.

The director of the department (the director) issued an order and notice (the initial order) denying Rincover registration as a securities salesperson. Rincover requested a hearing. Following a hearing before a hearing officer appointed by the director, the hearing officer submitted findings of fact, conclusions of law, a memorandum decision, and a proposed order denying Rincover's application. The director accepted the findings of fact, conclusions of law, and memorandum decision, and entered a final order (the final order) denying Rincover's application.

Rincover filed a petition for judicial review of the final order. The district judge affirmed the final order denying Rincover's application. Rincover appealed to this Court.

On appeal, Rincover raises several issues. We conclude that the resolution of two of these issues is dispositive.

## II.

### THE INITIAL ORDER DID NOT PROVIDE RINCOVER THE NOTICE REQUIRED BY THE SAFEGUARDS OF DUE PROCESS OF LAW.

▊ Rincover asserts that the denial of his application violated his right to due process of law, because the initial order did not notify him that the director would deny the application in the final order based on a violation of I.C. § 30–1403(2) or § 30–1403(3) in the Totorica matter. We agree.

▊ Rincover was entitled to the safeguards of due process of law before he was deprived of the opportunity to practice his profession. *H & V Engineering, Inc. v. Idaho State Bd. of Professional Eng'rs and Land Surveyors,* 113 Idaho 646, 649, 747 P.2d 55, 58 (1987). Notice, including the right to be fairly notified of the issues to be considered, is a critical aspect of due process in any administrative process. *Grindstone Butte Mut. Canal Co. v. Idaho Power Co.,* 98 Idaho 860, 865, 574 P.2d 902, 907 (1978). In contested administrative cases, the Idaho Administrative Procedure Act requires that the pre-hearing notice include reference to the particular sections of the statutes and issues involved. I.C. §§ 67–5209(b)(3)–(4).

In this case, the initial order made only one reference to I.C. § 30–1403. This reference did not relate to the Totorica matter. The only reference to the Totorica matter was a conclusion of law that Rincover lacked the necessary fitness to engage in the securities business because of his recommendation to Totorica of a high commission investment which, based on Totorica's stated objectives, age, income, and net worth, was unsuitable. The hearing officer rejected this as a basis for denying Rincover's application.

The hearing officer did conclude, however, that Rincover wilfully violated I.C. §§ 30–1403(2)–(3) by representing to Totorica that an investment was guaranteed and by failing to advise Totorica of the risks associated with the investment. In the final order, the director accepted the hearing officer's conclusions.

The initial order failed to provide Rincover with the notice required by the safeguards of due process of law.

## III.

### THE STATUTORY REFERENCE TO "DISHONEST OR UNETHICAL PRACTICES" IS UNCONSTITUTIONALLY VAGUE AS APPLIED TO THE VINCENT MATTER.

▊ Rincover asserts that the provisions of I.C. § 30–1413(7) are unconstitutionally

vague as applied to his conduct in the Vincent matter. We agree.

We first note that as we construe Rincover's contentions, he does not assert that this statute is facially vague. Therefore, we address only the question whether it is vague as applied to his conduct in the Vincent matter.

I.C. § 30–1413(7) provides that the director may deny registration of a securities salesperson if the director finds that the denial is in the public interest and that the applicant "has engaged in dishonest or unethical practices in the securities business." In the initial order, the director said that Rincover's dishonest and unethical practices in connection with the Vincent matter included:

a) borrowing in excess of $30,000 in the form of two loans from a securities client.

b) failing to repay moneys borrowed from a securities client.

c) violating an agreement with the Department of Finance to repay the money borrowed from the securities client.

d) failing to comply with the Prohibited Practices section of his broker-dealer compliance manual which explicitly states: "Registered representatives are specifically prohibited from ... borrowing money or securities from a customer or loan same to customer."

e) violating Article III, Section 1 of the NASD Rules of Fair Practice by borrowing money from a securities client.

Article III, § 1 of the NASD [National Association of Securities Dealers] Rules of Fair Practice (the NASD rules) states: "A member, in the conduct of [the member's] business, shall observe high standards of commercial honor and just and equitable principles of trade."

The hearing officer rejected all of the director's grounds for denying Rincover's application based on the Vincent matter, except the one concerning unethical practices. As to this ground, the hearing officer concluded:

Rincover engaged in unethical practices in the securities business by obtaining loans from the Vincents during a period of time in which a client-representative relationship existed between the Vincents and Rincover.

The hearing officer also concluded that Rincover's obtaining loans from the Vincents violated the broker-dealer compliance manual and the NASD rules, but stated that these violations did not constitute a basis for the denial of Rincover's application. In his memorandum decision, the hearing officer explained his reasoning concerning the Vincent matter:

As for Rincover's dealings with the Vincents, it appears that Rincover manipulated a friendship to obtain a substantial sum in loans. In borrowing money from securities clients, he created a situation involving very clear conflicts of interest. Moreover, he ignored provisions in [the broker-dealer compliance manual] prohibiting such loans. The hearing officer finds this fact to be of significance inasmuch as the record reflects that with respect to employees supervised by Rincover, ... Rincover preached strict adherence to [the broker-dealer compliance manual]. However, Rincover obviously felt that his actions were governed by different standards.

In the final order, the director denied Rincover's application "based upon [Rincover's] dishonest and unethical conduct which constituted wilful violations of the Idaho Securities Act."

Rincover cites *H & V Engineering* and *Tuma v. Board of Nursing*, 100 Idaho 74, 593 P.2d 711 (1979) in support of his vagueness assertion. In each of these cases, the Court ruled that the statutory provisions as applied by the agency involved were unconstitutionally vague. Recently, the Court revisited *H & V* and *Tuma* in *Krueger v. Board of Professional Discipline of Idaho State Board of Medicine*, 122 Idaho 577, 836 P.2d 523 (1992):

In *Tuma* and *H & V*, we held that the administrative boards could not rely merely on their own expertise, experience and collective knowledge, but must articulate clear standards which will warn the professional as to which acts are unlawful. We find the facts of this case distinguishable

from those in *Tuma* and *H & V*. In both of those cases the respective boards did not rely on the testimony of expert witnesses with regard to the professional standards in question, and instead relied solely on the expertise of the members of the board. In this case extensive expert testimony by local physicians was presented from which the Board made its determination that Dr. Krueger's conduct did not meet the local standard of care. It should also be noted that in *Tuma* we recognized that there had been no allegation that Tuma was unfit to practice nursing.... In the instant case the Board did call into question Dr. Krueger's fitness to practice medicine.

*Tuma* may be further distinguished in that it was not the Board of Nursing which found Tuma guilty of unprofessional conduct, but a hearing officer who "was not possessed of that expertise born of 'personal knowledge and experience' which would have enabled him, albeit after the fact, to determine whether Tuma had indeed acted unprofessionally." .... The Board of Nursing's only function was to approve or disapprove the decision of the hearing officer who had only a legal background. In this case the finding that Dr. Krueger had violated the community standard of care came directly from the Board of Professional Discipline of the Idaho State Board of Medicine, which was comprised of members of the medical community who did possess expertise born of personal knowledge and experience.

*Id.* at 580–81, 836 P.2d at 526–27.

This case is more like *Tuma* than *Krueger*. In issuing the final order the director relied on the findings, conclusions, and decision of a hearing officer. The record does not indicate that the hearing officer possessed expertise born of personal knowledge and experience which would enable the hearing officer to determine whether Rincover acted unethically.

Another way in which this case is more like *Tuma* than *Krueger* is that here there was no expert testimony that Rincover's actions in the Vincent matter were unethical. The bureau chief for the securities division of the department testified that he was concerned about the potential abuses that could arise from a broker borrowing from a client. The bureau chief did not state that the practice was unethical, but only that it created concerns.

In both *Tuma* and *H & V* the Court acknowledged that the supervising agency could have provided the necessary warning to the professional through exercising its authority to adopt rules and regulations that would have described conduct proscribed by the statute. *Tuma*, 100 Idaho at 79–80, 593 P.2d at 716–17; *H & V*, 113 Idaho at 650, 747 P.2d at 59. The bureau chief also testified that there was no rule or regulation of the department stating that securities professionals could not have loans from clients. In effect, the director asks us to allow the broker-dealer compliance manual and the NASD rules to stand in the place of the rules and regulations of the department. We reject this suggestion. Neither the broker-dealer compliance manual nor the NASD rules have the standing of rules and regulations of the department. To allow the department to apply the standards contained in the compliance manual and the NASD rules to Rincover's actions without having previously adopted the standards in its rules and regulations would allow the department, in effect, to delegate its rule-making authority after the fact. This would be contrary to the framework contained in *Tuma* and *H & V* for applying statutory standards constitutionally. It would open the door to the application by agencies of standards not contained in the statutes or the rules and regulations of the agency. This would undermine the requirement of definite warnings that is the fundamental premise of the concept of unconstitutional vagueness.

Although in *Krueger* the Court upheld the application of a statutory standard based on expert testimony of other physicians, this is not the same as the director's attempt to apply the broker-dealer compliance manual and the NASD rules here. In *Krueger*, the Court said:

We are convinced that Dr. Krueger did have adequate notice of the conduct which could subject him to discipline. The stat-

924

ute in question here is distinguishable from the "unprofessional conduct" statute in *Tuma* and the "misconduct" statute in *H & V*, in that it merely codified well-established concepts of medical malpractice. In view of the similarity between the disciplinary statute and the accepted definition of medical malpractice, we believe the language of I.C. § 54–1814(7) was sufficient to notify medical practitioners that they could be disciplined for failure to conform to the community standards.

122 Idaho at 582, 836 P.2d at 528.

The "well-established concepts of medical malpractice" mentioned in *Krueger,* referred to the local community standard of health care practice contained in I.C. § 6–1012, which the Court said was similar to the standard contained in the disciplinary statute, and which the Court said "is merely a codification of already existing case law." *Id.* at 580, 836 P.2d at 526. In this case, there is no other Idaho statute concerning securities salespersons with language similar to the provisions of I.C. § 30–1413(7). Also, I.C. § 30–1413(7) is not merely a codification of already existing case law.

Another way in which this case is more like *Tuma* than *Krueger* is that although the initial order stated Rincover's activities demonstrated "a general lack of fitness for the securities business," after the hearing neither the hearing officer nor the director relied on this basis for denying Rincover's application.

For all of these reasons, we conclude that *Tuma,* not *Krueger,* governs this case.

## IV.

### CONCLUSION.

We reverse the district judge's order affirming the director's final order denying Rincover's application. We remand the case to the district judge with directions to enter judgment reversing the director's denial of Rincover's application.

We award costs, but not attorney fees, on appeal to Rincover.

McDEVITT, C.J., BISTLINE and TROUT, JJ., and HART, J. Pro Tem., concur.