90 P.3d 902

**Tarek L. HAW, M.D., Plaintiff–Appellant–Cross Respondent,**

v.

**IDAHO STATE BOARD OF MEDICINE, Defendant–Respondent–Cross Appellant.**

**No. 29566.**

Supreme Court of Idaho, Boise, February 2004 Term.

April 22, 2004.

Hawley, Troxell, Ennis & Hawley, Boise, for appellant. Joseph D. McCollum, Jr., argued.

Uranga & Uranga, Boise, for respondent. Jean R. Uranga argued.

EISMANN, Justice.

This is an appeal of an order from the Board of Medicine that permanently restricted the physician's license, imposed fines totaling $20,000, and assessed costs and attorney fees totaling $116,067.05. We affirm the license restriction, reverse the fines, vacate the attorney fees and costs, and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

In August 1993, the Idaho State Board of Medicine (Board) began receiving complaints relating to the refusal of the defendant-appellant Terek Haw, M.D., to provide patient records to physicians who later treated his patients. Ultimately, the Board had an investigator select from Dr. Haw's medical records twenty-one patient files. Eight of them involved complaints that had been made to the Board and the remaining thirteen were selected at random. Those twenty-one files were then sent for review to a number of physicians selected by the Board.

On October 5, 2000, the Board filed a twenty-one-count complaint against Dr. Haw alleging that the medical care he had provided to the twenty-one patients fell below the applicable standard of health care. On December 15, 2000, the Board filed an amended complaint adding two more counts, both of which involved care provided to some of the patients already named in the original complaint. The matter was tried before a hearing officer beginning on January 8, 2001, and continuing thereafter until February 26, 2001. On October 26, 2001, the hearing officer issued his proposed findings of fact and conclusions of law and proposed order.

After reviewing the record, the Board on January 23, 2002, issued its findings of fact, conclusions of law, and final order. It adopted the hearing officer's recommended findings of fact and conclusions of law, and it made additional findings of fact and conclusions of law.

Although the complaint alleged multiple violations of the standard of care with respect to each patient, the major issue was Dr. Haw's practice of using estrogen injections in hormone replacement therapy. Hormone replacement therapy is the use of prescribed hormones by a physician to treat a low or absent level of hormones in an individual. The cause of hormone deficiencies in women is generally related to ovarian failure at, or in some instances prior to, menopause or to the surgical removal of the ovaries. In such cases, hormone replacement therapy is used to treat the symptoms of estrogen deficiency and to maintain bone integrity and

prevent osteoporosis. It may also have a secondary effect of reducing the woman's total cholesterol and LDL cholesterol. The risks of hormone replacement therapy include a potential for blood clots, an increased risk of gallstones, an increased risk of endometrial cancer in women who have a uterus and receive unopposed estrogen, a risk of the growth of estrogen-dependent tumors, and a risk of endometriosis. Some of these risks are dose related, meaning the higher the dose the greater the risk.

Estrogen can be delivered in pill form, by transdermal patches, and through injections. Each has its benefits and detriments. Pills are easy to take, but estrogen received in this form is initially processed by the liver and may not be assimilated or tolerated well by all women. Transdermal patches deliver estrogen in more consistent doses and in a manner that initially bypasses the liver, but the patches irritate the skin of some women. Estrogen delivered by injections also bypasses the liver and may be more effective in some patients. It can create, however, dependence and addictive behavior. With injections, the levels of estrogen peak at a very high level a week or two after the injection, and then they fall. Higher and higher doses are often required because the patient starts withdrawing from the hormones sooner and sooner. The woman may then start seeking recurrent injections at higher and higher doses over time and become desperate to obtain the next injection.

Idaho Code § 54–1814(7) provides that a licensed physician is subject to discipline by the Board if the physician provides health care "which fails to meet the standard of health care provided by other qualified physicians in the same community or similar communities, taking into account his training, experience and the degree of expertise to which he holds himself out to the public." The Board found that the standard of health care in Boise, Idaho, in the practice of hormone replacement therapy is: (a) to first utilize pills or patches, and not to use estrogen injections as an initial treatment; (b) to use the lowest estrogen dose necessary to treat the symptoms associated with estrogen deficiency; (c) to use estrogen injections if

the patient does not respond or has a negative reaction to estrogen replacement by the pill or patch; (d) when estrogen injections are used, to inject 10–20 milligrams every four weeks for estradiol valerate, the type used by Dr. Haw; and (e) to use an FSH blood test before commencing hormone replacement therapy to help determine ovarian function if it is not clear whether a patient is menopausal.

The manufacturer's package insert for estradiol valerate states that the Food and Drug Administration has approved its short-term use for the treatment of moderate to severe vasomotor symptoms, atrophic vaginitis, kraurosis vulvae associated with menopause, and cyclical use only for the treatment of female hypogonadism, female castration or primary ovarian failure. The insert further provides that the dosage for these indications is 10–20 milligrams every four weeks, that the lowest dose that will control symptoms should be chosen, and that the medication should be discontinued as promptly as possible. The insert recommends that attempts to discontinue or taper medication should be made at three to six month intervals. The FDA had approved use of a single 10–25 milligram injection to prevent postpartum breast engorgement and injections every one or two weeks of 30 or more milligrams for palliative treatment of inoperable, progressing prostatic carcinoma. The manufacture of estradiol valerate was discontinued in 1999, and it was replaced with a drug having the brand name of Depo–Estradiol. The package inserts for it contained essentially the same recommendations as estradiol valerate.

The Board found by clear and convincing evidence that, in administering hormone injections to eighteen patients treated at various times during the period from April 1985 to the date of the hearing, Dr. Haw administered estrogen injections in higher dosages and at greater frequencies than permitted by the standard of health care in Boise, Idaho. The dosages that Dr. Haw administered to these patients ranged from 15 milligrams every three weeks to 50 milligrams every two weeks. In fourteen of the cases, Dr. Haw increased the dosage during the course of treatment, and the length of treatment

ranged from two and one-half months to over fourteen years. With respect to two of those patients, the Board also found that he violated the standard of care by failing to utilize the FSH blood test in diagnosing or assessing their estrogen levels. It also found that he had violated the standard of care by initiating and continuing to use estrogen injections with one of those patients and by using unopposed estrogen even though she had a uterus. The Board found that Dr. Haw had violated the standard of medical care with respect to another patient by failing to address her elevated glucose cholesterol and trigliceride lab results. The Board found that no violation of the standard of care had been proven with respect to two of the patients and with respect to Count Twenty–Three. With respect to Count Twenty–Two, the Board found that Dr. Haw had violated the standard of medical care by preparing and providing his patients with pre-filled syringes and by not properly labeling them in violation of the labeling requirements of the Idaho Controlled Substances Act and the Idaho Food, Drug and Cosmetic Act. In addition to the allegations in the amended complaint, the Board also found that Dr. Haw had twice violated a protective order issued on December 26, 2000, by the hearing officer pursuant to a stipulation of the parties. The protective order prohibited him from harassing any witnesses or naming them in any newspaper ads. Finally, the Board found that the numerous other allegations with respect to these twenty-one patients had not been proven.

As a result of the violations that it found to have been proven, on January 23, 2002, the Board ordered:

1. That Dr. Haw's license to practice medicine in Idaho is permanently restricted to the extent that he is no longer licensed to prescribe, dispense, administer, or otherwise treat female patients with injectable hormone therapy.

2. That a Public Letter of Reprimand shall be issued for Dr. Haw's failure to address the elevated glucose, cholesterol, and triglycerides which were evident in numerous lab results of the one patient.

3. That the Idaho Department of Health and Welfare and the Board of Pharmacy shall be notified in writing that Dr. Haw violated the labeling requirements of the Idaho Controlled Substances Act and the Idaho Food, Drug and Cosmetic Act.

4. That Dr. Haw shall pay a fine of $10,000 each for his two violations of the protective order.

5. That Dr. Haw shall pay the Board's costs and attorney fees in the sum of $116,067.05.

Dr. Haw timely filed a petition for review with the district court. It upheld the action of the Board except with respect to the imposition of the fines, costs and attorney fees. The district court vacated the fines because they appeared to it to be an expression of the Board's exasperation with the barrage of advertisements addressed to it, rather than a reasoned sanction for a violation of the order aimed at protecting witnesses. It vacated the award of costs and attorney fees because Dr. Haw was not given notice of the amount or an opportunity to object before it was imposed and because the district court felt that the costs and attorney fees should be reduced after considering the allegations upon which Dr. Haw prevailed. Dr. Haw timely appealed, and the Board timely cross-appealed.

## II. ISSUES ON APPEAL

A. Was Dr. Haw denied due process of law because the Board of Medicine had not promulgated rules defining the applicable standard of care prior to commencing these proceedings?

B. Was the Board of Medicine's finding as to the applicable standard of care clearly erroneous?

C. Did the Board of Medicine have the authority to impose $20,000 in fines for violation of the protective order?

D. Did the Board of Medicine deny Dr. Haw due process of law by assessing costs and attorney fees without first giving him notice and an opportunity for a hearing?

## III. ANALYSIS

A physician aggrieved by the Board's decision in a disciplinary proceeding may file a petition for review in the district court pursuant to the procedures of the Administrative Procedure Act (APA). IDAHO CODE § 54–1806A(11) (2003). In an appeal from the district court's decision, where it was acting in its appellate capacity in a review under the APA, this Court reviews the agency record independently of the district court's decision. *Laurino v. Board of Prof'l Discipline of the Idaho State Bd. of Med.,* 137 Idaho 596, 51 P.3d 410 (2002). We therefore do not focus on the rulings of the district court. On review under the APA, this Court does not substitute its judgment for that of the Board as to the weight of the evidence presented. *Id.;* IDAHO CODE § 67–5279(1) (2001). Rather, this Court defers to the Board's findings of fact unless they are clearly erroneous. The Board's order may be overturned only where it: (a) violates statutory or constitutional provisions; (b) exceeds the agency's statutory authority; (c) was made upon unlawful procedure; (d) is not supported by substantial evidence in the record as a whole; or (e) is arbitrary, capricious, or an abuse of discretion. In addition, the order must be upheld if substantial rights of the appellant have not been prejudiced. *Id.;* IDAHO CODE § 67–5279(4) (2001). If the order is not affirmed, it shall be set aside in whole or in part and the case remanded. IDAHO CODE § 67–5279(3)(e) (2001).

**A. Was Dr. Haw Denied Due Process of Law Because the Board of Medicine Had Not Promulgated Rules Defining the Applicable Standard of Care Prior to Commencing These Proceedings?**

The Due Process Clause of the federal Constitution embodies the principle of void-for-vagueness, which is that a statute which either forbids or requires the doing of an act in terms so vague that people of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. *Tuma v. Board of Nursing,* 100 Idaho 74, 593 P.2d 711 (1979). Idaho Code § 54–1814(7) provides that a physician licensed to

practice medicine in Idaho is subject to discipline by the Board for "[t]he provision of health care which fails to meet the standard of health care provided by other qualified physicians in the same community or similar communities, taking into account his training, experience and the degree of expertise to which he holds himself out to the public." The language of this statute is similar to the well-accepted definition of medical malpractice and is not unconstitutionally vague on its face. *Krueger v. Board of Prof'l Discipline of the Idaho State Bd. of Med.*, 122 Idaho 577, 836 P.2d 523 (1992). It is sufficient to notify medical practitioners that they could be disciplined for failure to conform to community standards, *Laurino v. Board of Prof'l Discipline of the Idaho State Bd. of Med.*, 137 Idaho 596, 51 P.3d 410 (2002), and it is not unconstitutionally vague, even though the Board has not promulgated any regulations to further define and explain the statute, *Krueger v. Board of Prof'l Discipline of the Idaho State Bd. of Med.*, 122 Idaho 577, 836 P.2d 523 (1992).

The Board permanently restricted Dr. Haw's medical license to the extent that he "is no longer licensed or authorized, individually or by means of a staff member or agent, to prescribe, dispense, administer, or otherwise treat any female patients with injectable hormone therapy in the state of Idaho," even though the use of injectable hormone therapy is not, by itself, below the standard of care. Rather, it was the dosages and the frequency of injections administered by Dr. Haw that the Board found violated the standard of care. It permanently restricted Dr. Haw's license, however, because the Board found "it is reasonable to conclude that he will not voluntarily accept the fact that his practice of routinely prescribing injectable hormone therapy for females has been found by the Hearing Officer, and upheld by the Board, as violating the community standard of care." The Board noted, "[H]is testimony at the hearing reiterated that he does not believe that there is any medical reason for him to change or alter his frequent use of injectable hormone therapy for females." In light of the evidence, the Board determined that "the only reasonable method of curtailing Respondent's violation of the community standard of

care in the use of injectable hormone therapy for females is to permanently restrict his medical license." Dr. Haw does not challenge the Board's authority to permanently restrict his license as it did.

Dr. Haw contends that he was denied due process by the Board's failure to promulgate regulations setting forth clearly defined standards with respect to the use of injectable hormones. In *Krueger* this Court held that the standard set forth in Idaho Code § 54–1814(7) provided notice sufficient to comply with the requirements of due process. Dr. Haw argues that *Krueger* should not apply in this case because *Krueger* involved a single incidence of misconduct with each of eight patients rather than a continuing method of treatment over a period of fifteen years for a class of patients who are all consenting adults and who have not been shown to have suffered any physical harm from the treatment. The alleged due process violation is the failure to give him adequate notice of what conduct will subject him to sanctions. We fail to see how the notice provided by § 54–1814(7) is rendered deficient simply because the physician has engaged in a longstanding, routine practice of violating the community standard of health care. There is no requirement that the violation of the community standard must have caused physical harm to the physician's patients. The statute does not require physical harm before the Board may act, nor has this Court required it. *See Krueger v. Board of Prof'l Discipline of the Idaho State Bd. of Med.*, 122 Idaho 577, 836 P.2d 523 (1992), where this Court upheld sanctions without mentioning whether the physician's patients suffered any harm. One of the purposes of the Medical Practice Act is to assure the public health, safety and welfare, and consistent with that purpose the Board may discipline a physician for providing health care that fails to meet the applicable standard of care even if it cannot prove that the physician's patients have yet suffered any physical harm.

**B. Was the Board of Medicine's Finding as to the Applicable Standard of Care Clearly Erroneous?**

The Board's determination that a physician has violated the standard of care

must be supported by expert testimony establishing the community's generally accepted standard of care, taking into account the circumstances of each case under scrutiny and the physician's training and experience and the degree of his or her expertise portrayed to the public. *Laurino v. Board of Prof'l Discipline of the Idaho State Bd. of Med.*, 137 Idaho 596, 51 P.3d 410 (2002); IDAHO CODE § 54–1814 (2003). The Board decides the weight to be given expert testimony regarding the standard of care. *Laurino v. Board of Prof'l Discipline of the Idaho State Bd. of Med.*, 137 Idaho 596, 51 P.3d 410 (2002).

■ The Board found credible the expert physicians it called to testify. The hearing officer's findings, which the Board adopted, stated, "The Board's expert physician witnesses agreed on most aspects of female hormone replacement therapy. They also appeared to be representative of the community. They also clearly possessed the education, training and experience to render opinions upon this area of medical practice." Dr. Haw argues that the Board should not have believed those experts. This Court may not substitute its judgment for that of the Board as to the weight of the evidence. *Pearl v. Board of Prof'l Discipline of the Idaho State Bd. of Med.*, 137 Idaho 107, 44 P.3d 1162 (2002). The Board's findings as to the standard of care are supported by substantial evidence and are not clearly erroneous.

## C. Did the Board of Medicine Have the Authority to Impose $20,000 in Fines for Violation of the Protective Order?

■ On December 26, 2000, the hearing officer issued a protective order, pursuant to the parties' stipulation, designed to prevent Dr. Haw from harassing the expert witnesses who were going to testify at the hearing. The Board found that he had twice violated that protective order, and it imposed an administrative fine of $10,000 for each of the violations.

At oral argument, the Board conceded that it has no contempt power. Indeed, Idaho Code § 54–1806, which sets forth the powers and duties of the Board, provides that if someone disobeys a subpoena issued by the Board, or refuses to testify, the Board can apply to the district court, and the district court shall compel compliance by proceedings for contempt. The Board may only impose a fine of up to $10,000 for each count or offense if it finds grounds for discipline. IDAHO CODE § 54–1806A (2003). The grounds for discipline are set forth in Idaho Code § 54–1814. None of the twenty-two grounds listed includes the violation of a protective order issued by a hearing officer. Therefore, because the Board had no authority to fine Dr. Haw for violating the protective order, we reverse imposition of the two $10,000 fines.

## D. Did the Board of Medicine Deny Dr. Haw Due Process of Law by Assessing Costs and Attorney's Fees Without First Giving Him Notice and an Opportunity for a Hearing?

■ In its findings of fact, conclusions of law, and final order, the Board included a requirement that Dr. Haw pay the costs and attorney fees incurred by the Board in the sum of $116,067.05.[1] Due process applies to the award of costs and attorney fees. *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 120 S.Ct. 1579, 146 L.Ed.2d 530 (2000). Due process includes the right to be fairly notified of the issues to be considered, *Pearl v. Board of Prof'l Discipline of the Idaho State Bd. of Med.*, 137 Idaho 107, 44 P.3d 1162 (2002), and an opportunity to be heard at a meaningful time and in a meaningful manner, *Paul v. Board of Prof'l Discipline of the Idaho State Bd. of Med.*, 134 Idaho 838, 11 P.3d 34 (2000). Idaho Code § 54–1806A(9)(e) provides that if the Board finds grounds for disciplining a physician, the Board may issue its order "[a]ssessing costs and attorney's fees against the respondent physician for any investigation and/or administrative proceeding." Dr. Haw was certainly on notice that the Board could assess costs and attorney fees against him if it found grounds for discipline. He was not given an opportunity to be heard, however, regarding the amount of costs and

1. The costs were $865.27 for security, $17,254.62 for court reporters, and $34,960.93 for hearing officers. The balance of $62,986.23 was for the Board's attorney fees.

**160**

fees to be assessed. The procedural rules governing these proceedings were the Rules of Practice and Procedure of the Board of Medicine and specified portions of the Idaho Rules of Administrative Procedure of the Attorney General. IDAPA 22.01.07.001 & – 05. None of those rules contain any provision giving the respondent physician an opportunity to be heard at all regarding the amount of costs and fees to be assessed by the Board. Under the Due Process Clause, Dr. Haw was entitled to that opportunity. We therefore vacate the award of costs and attorney fees and will remand this matter for further proceedings consistent with this opinion.

### IV. CONCLUSION

We affirm the order of the Board permanently restricting Dr. Haw's license to practice medicine in Idaho, we reverse the imposition of the $20,000 in fines, we vacate the award of costs and attorney fees, and we remand this case for further proceedings consistent with this opinion.

Chief Justice TROUT, and Justices KIDWELL, BURDICK and Justice Pro Tem SCHILLING concur.