44 P.3d 1162

Janice M. PEARL, M.D., Petitioner–Appellant,

v.

BOARD OF PROFESSIONAL DISCIPLINE OF the IDAHO STATE BOARD OF MEDICINE, Respondent.

No. 26696.

Supreme Court of Idaho, Boise, December 2001 Term.

March 26, 2002.

Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, for appellant. James C. De Glee argued.

Uranga & Uranga, Boise, for respondent. Jean R. Uranga argued.

SCHROEDER, Justice.

This is an appeal from the Board of Professional Discipline (BPD) of the State Board of Medicine (the Board), which issued a reprimand to Dr. Janice Pearl (Dr. Pearl) after finding that she failed to provide medical care that met the standard of health care provided by qualified physicians in same or similar communities. Dr. Pearl's case was considered before a hearing officer, whose conclusions were rejected by the Board. Dr. Pearl contends that she was entitled to a hearing before a panel of licensed physicians and that the evidence does not support the Board's findings.

## I.

### FACTS AND PROCEDURAL HISTORY

On August 7, 1995, Dr. Pearl began working at the Minidoka County Hospital. The Board filed an eight count disciplinary complaint against her on March 31, 1998, alleging violations of the Idaho Medical Practices Act in that Dr. Pearl "provided health care which fail[ed] to meet the standard of health care provided by other qualified physicians in the same or similar communities." An evidentiary hearing was conducted by an attorney-hearing officer on June 29, 30, July 1 and 24, 1998. The hearing officer found no violations of the standard of care in counts one, four, five, six, and eight and recommended that those counts be dismissed. With respect to counts two, three, and seven, the hearing officer found minor violations of the standard of care and recommended a formal letter of caution to Dr. Pearl.

Counsel for the Board disagreed with the hearing officer's recommended order and submitted a brief and exceptions to the recommended order. In addition to disagreeing with the hearing officer's findings, counsel alleged that the hearing officer had inappropriately consulted an outside physician regarding count one of the complaint.

The Board rejected all but one of the hearing officer's recommendations, finding violations of the standard of care in seven of the eight counts alleged. The Board issued a reprimand to Dr. Pearl, requiring that Dr. Pearl provide a physician monitor at each location she practiced and provide the Board with the names and telephone numbers of supervisors, employees, coworkers, and staff for the Board to contact.

Dr. Pearl appealed the Board's decision to the district court, arguing that she was entitled to a hearing before a panel of licensed physicians rather than to a hearing officer, and that the record did not support the Board's conclusions. While that appeal was pending, the Idaho Legislature revised I.C. § 54–1806. This revision dissolved the Board of Professional Discipline and created a Committee on Professional Discipline. The revised statute specifically allows hearing officers to "take evidence, conduct hearings and make recommended findings and conclusions."

The district court held that Pearl was not entitled to a hearing before a panel of licensed physicians but remanded four of the eight counts alleged in the complaint back to the Board. This appeal followed.

## II.

### STANDARD OF REVIEW

*Paul v. Board of Professional Discipline*, 134 Idaho 838, 11 P.3d 34 (2000), sets forth the applicable standards of review:

[T]he standard of review for an appeal to the Court is found in I.C. § 67–5279. The court reviews the agency record independently of the district court's decision. *First Interstate Bank of Idaho, N.A., v. West*, 107 Idaho 851, 852–53, 693 P.2d 1053, 1054–55 (1984). The Court defers to the agency's findings of fact unless those findings are clearly erroneous. *Ferguson v. Board of County Comm'rs for Ada County*, 110 Idaho 785, 788, 718 P.2d 1223, 1226 (1986). The Court may not substitute its judgment for that of the agency as to the weight of evidence presented in the record. I.C. § 67 5279(1); *Woodfield v. Board of Professional Discipline*, 127 Idaho 738, 744, 905 P.2d 1047, 1053 (Ct.App. 1995).

The agency's findings must be affirmed unless the findings are not supported by substantial evidence on the record as a

whole or the findings are arbitrary, capricious or an abuse of discretion. I.C. § 67–5279(3)(d)(e). Substantial evidence is more than a scintilla of proof, but less than a preponderance. *Boley v. State, Industrial Special Indem. Fund*, 130 Idaho 278, 280, 939 P.2d 854, 856 (1997). It is relevant evidence that a reasonable mind might accept to support a conclusion. *Id.*

Where the agency's findings disagree with those of the hearing panel, this Court will scrutinize the agency's findings more critically. *Woodfield v. Board of Professional Discipline*, 127 Idaho 738, 746, 905 P.2d 1047, 1053 (Ct.App.1995). As the Court of Appeals noted in *Woodfield*, there is authority for courts to impose on the agency an obligation of reasoned decision making that includes a duty to explain why the agency differed from the administrative law judge. *Woodfield*, 127 Idaho at 746, 747 n. 3, 905 P.2d at 1053 n. 3.

### III.

### THE MEDICAL PRACTICES ACT DID NOT REQUIRE THAT DR. PEARL'S DISCIPLINARY HEARING BE BEFORE A PANEL OF LICENSED PHYSICIANS

It has been standard practice in disciplinary proceedings brought by the Board to use hearing officers who conduct evidentiary hearings and make recommendations. Appellate decisions have been rendered in Idaho that arose from hearings before non-physician hearing officers. *See, e.g., Krueger v. Board of Professional Discipline*, 122 Idaho 577, 836 P.2d 523 (1992); *Woodfield v. Board of Professional Discipline*, 127 Idaho 738, 905 P.2d 1047 (Ct.App.1995). However, the issue raised by Dr. Pearl was not raised in those previous decisions.

Before its revision, I.C. § 54–1806A authorized the Board of Medicine to create a Board of Professional Discipline and gave the Board of Professional Discipline the "role and authority in the enforcement and supervision of professional disciplinary enforcement ..."

I.C. § 54–1806A(6)(d) empowered the BPD to form disciplinary hearing committees. This statute stated, in relevant part:

(6) Additional Powers of the Board of Professional Discipline. In addition to its other powers, the board of professional discipline shall be empowered and authorized:

[ ... ]

(d) To appoint hearing committees to take evidence, conduct hearings and make recommended findings and conclusions to it in any matter or proceeding assigned to the committee, which hearings shall be of such number and size as the disciplinary board directs composed of licensed physicians resident and licensed to practice medicine and surgery in Idaho....

I.C. § 54–1806A(6)(d)(1990).

Dr. Pearl maintains that the BPD violated this statute by appointing a non-physician hearing officer rather than a panel of physicians, arguing that the statute made the appointment of a panel of physicians mandatory. This position is incorrect.

■ The decision to appoint a committee of physicians is discretionary with the BPD. The statute specifically states that this is an "additional" power of the BPD and that the BPD "shall be empowered and authorized" to create such a panel. The statute clearly does not require the BPD to create a panel. Other statutory provisions empower the BPD to appoint hearing officers. I.C. § 54–1806(1) states that the BPD has the power to "[h]ire or appoint ... independent hearing examiners." I.C. § 54–1806(4) provides that the Board of Medicine, the Board of Professional Discipline, or its hearing officer may "administer oaths, take witness and the production of such books, records, and papers as it may desire ..." Further, I.C. § 54–1806(2) gives the Board power to adopt rules for the administration of the chapter. The Board has adopted a rule that allows a hearing before a "Hearing Officer Appointed by the Board." IDAPA 22.01.07.044.01.

■ Dr. Pearl argues that there is a conflict between statutes and that the more specific statute should control. *See, e.g., Paterson v. State*, 128 Idaho 494, 915 P.2d 724

(1996). She maintains that I.C. § 54–1806A(6)(d) is a more specific statute because it empowers a panel to conduct hearings. However, the statutes do not conflict. I.C. § 54–1806A(6)(d) is a discretionary statute. The Act allows for both a panel and for hearing officers.

■ An agency's interpretation of its statutes is entitled to deference. *Simplot v. Idaho State Tax Comm'n,* 120 Idaho 849, 820 P.2d 1206 (1991). This case involves the interpretation of the Medical Practices Act by the State Board of Medicine. The four-prong test of *Simplot* is: (1) the court must determine whether the agency has been entrusted with the responsibility to administer the statute at issue, (2) the agency's statutory construction must be reasonable, (3) the court must determine that the statutory language at issue does not treat the precise issue, and (4) a court must ask whether any of the rationales underlying the rule of deference are present. *Id.* If this test is met, the court must give "considerable weight" to the agency's interpretation. *Id.*

■ It is clear that the Board may "establish pursuant to the administrative procedure act rules and regulations for the administration of this chapter." I.C. § 54–1806(2). The Board may therefore administer this act.

Second, the agency's interpretation must be reasonable. It is clear that the Medical Practices Act allows hearing officers to conduct evidentiary hearings. I.C. § 54–1806(4). The Medical Practices Act does not specifically empower a hearing officer to make recommended orders, but also does not restrict a hearing officer's power to do so. A hearing officer has broad power to gather and hear evidence, and it is not unreasonable to conclude that the officer may issue a recommendation based upon that hearing.

Third, the statutory language must not be present to address the specific issue. Dr. Pearl argues that there is specific statutory language that addresses this issue—I.C. § 54–1806A(6)(d), which allows for the Board of Professional Discipline to create a panel of physicians to conduct hearings. However, as discussed above, this is a discretionary statute—it does not require the Board to create

such a panel. Therefore, it does not address the specific issue of whether a hearing officer may be utilized instead of a panel of physicians.

Fourth, the rationales underlying the rule of deference must be present. Dr. Pearl does not suggest that these rationales are not present. The rationales for deference are that interests have arisen in reliance on the agency's statutory interpretation, that the agency has a practical interpretation, that the legislature acquiesces to the interpretation, and that agency expertise is required. *Id.* at 858–860, 820 P.2d 1206.

These rationales exist in this case. The use of hearing officers in disciplinary proceedings has been standard practice, and cases involving the use of hearing officers have been affirmed at the appellate level. The Board's interpretation is also practical—hearing officers have the power to issue subpoenas and conduct hearings; it is practical that hearing officers would recommend action to the Board. The legislature has acquiesced to this practice prior to this lawsuit.

The legislature amended the Medical Practices Act in 2000, and the act now specifically allows a hearing officer to conduct hearings and issue recommended orders which are reviewed by the Committee on Professional Discipline and which are then reviewed by the State Board of Medicine. See I.C. § 54–1806A (2000). Dr. Pearl argues that because the legislature amended the Act, the legislature must have intended to change the law. Because the law now allows for hearing officers, Dr. Pearl contends, it must not have allowed them before the revision.

■ Dr. Pearl is correct that it is presumed that the Legislature does not engage in superfluous acts. In *Treasure Valley Concrete, Inc. v. State,* 132 Idaho 673, 676, 978 P.2d 233, 236 (1999), this Court stated that "[i]t is a well established rule of this Court that 'where an amendment is made it carries with it the presumption that the legislature intended the statute thus amended to have a meaning different than theretofore accorded it' (citations omitted). This Court has also stated that "[i]n enacting amendments to existing statutes, the legisla-

ture must have intended to clarify, strengthen, or make some change in existing statutes." *Stonecipher v. Stonecipher,* 131 Idaho 731, 735, 963 P.2d 1168, 1172 (1998).

■ Dr. Pearl asserts that the legislature enacted the revisions to deal with her argument that hearing officers may not conduct disciplinary proceedings. If the revision was indeed a response to Dr. Pearl's lawsuit, it gives credence to the Board's initial interpretation—the legislature responded to a possible ambiguity in the statute and wanted to ensure that hearing officers retained the power to conduct hearings, just as had always been assumed. It is reasonable to conclude that the legislature clarified Idaho law to ensure that hearing officers could conduct disciplinary proceedings.

■ The last rationale for agency deference is that agency expertise is required. As the district court noted, medicine is a technical discipline, and the Board of Medicine is an expert at it.

The rationales for agency deference are present, and the Board's interpretation of the statutes should be given considerable weight. The use of a hearing officer in this case was appropriate and not contrary to the Medical Practices Act in effect at the time of the lawsuit.

## IV.

## THE BOARD COULD REJECT THE HEARING OFFICER'S RECOMMENDED ORDER AND MAKE FINDINGS OF FACT

Dr. Pearl argues that the Board inappropriately rejected the hearing officer's recommended order. She does not dispute that it is the Board, not the hearing officer, that is the ultimate fact finder in disciplinary actions or that the Board is not bound by a hearing officer's recommendations.

The Board rejected the hearing officer's recommendations for the following reasons. The Board determined that the hearing officer's recommendations were contrary to the evidence presented, that the hearing officer inappropriately based his recommendations on his own experience as a military medic,

that he gave more credibility to Dr. Pearl's witnesses than Dr. Wayment and Dr. Jonakin, who both testified to the standard of care in Rupert, Idaho. The Board also found that the hearing officer lost objectivity by filing a Hearing Officer's Response to the Board's Brief and Exceptions to the Recommended Order, and that the hearing officer had inappropriately consulted an outside physician regarding Count One of the complaint.

■ The Board does not need to accept the hearing officer's factual determinations. *E.g., Dep't of Health and Welfare v. Sandoval,* 113 Idaho 186, 190, 742 P.2d 992, 996 (Ct.App.1987). This Court reviews the findings of the Board, not the hearing officer, although this Court gives the Board's decision greater scrutiny if the Board refuses to accept that hearing officer's recommendations.

■ Dr. Pearl also contends that the Board violated her right to due process by basing its decisions on allegations not contained in the complaint, which she did not have an opportunity to defend. Dr. Pearl is entitled to due process safeguards in a disciplinary proceedings, *H & V Engineering, Inc., v. Idaho State Board of Professional Engineers,* 113 Idaho 646, 747 P.2d 55 (1987), which include the right to be fairly notified of the issues to be considered. *Grindstone Butte Mut. Canal Co. v. Idaho Power Co.,* 98 Idaho 860, 574 P.2d 902 (1978). Where a decision is based on allegations of which the physician has not received notice, the decision should be overturned as a denial of due process. *Krueger v. Board of Professional Discipline,* 122 Idaho 577, 836 P.2d 523 (1992). Dr. Pearl also contends that the Board's decision is not supported by substantial and competent evidence. The seven counts that the Board found that Dr. Pearl had violated must be examined individually.

### A. Count One

■ Count One of the complaint charges: Respondent provided medical care and treatment to Patient S.B. during the hospitalization which was below the standard of care. Psychiatric consultation would have

been appropriate in a patient with behavioral abnormalities. The patient experienced iatrogenic barbiturate intoxication, consistent with the multiple doses of Phenobarbital administered. Phenobarbital administration appears to have been overly aggressive. The patient was also given Compazine for behavioral problems. This is a poor choice in a seizure patient, as phenothiazines lower the seizure threshold.

The district court held that the Board's findings of fact deviated from the allegations contained in the complaint, and therefore held that Pearl's due process rights were violated. That decision is correct.

The Board found that Dr. Pearl violated the standard of care by not monitoring Dilantin levels in the patient. The Board also found that her use of valium on the patient violated the standard of care. It is clear that Count One does not concern the administration of valium or the monitoring of Dilantin. Under *Krueger,* a physician must be given notice of the particular violations of the standard of care in order to have the opportunity to present evidence and gather witnesses. The Board based its decision in part on Dr. Pearl's administration of valium and monitoring of Dilantin levels. These violations were not contained in Count One. Therefore, the Board violated Dr. Pearl's due process rights by considering this evidence.

### B. Count Two

Count Two of the complaint charges:

On or about September 13, 1995, Patient A.D., a 19–year–old male, was admitted to the Minidoka Memorial Hospital emergency room in Rupert, Idaho, with a laceration to the top of the left foot. The laceration was described as 6 centimeters in length, 1 to 2 centimeters deep, and varied from 1 to 4 centimeters in width. Respondent provided medical care and treatment to Patient A.D. during his admission which was below the standard of care, in that Respondent failed to clean and anesthetize the wound prior to suturing.

The Board found that Dr. Pearl violated the standard of care by failing to evaluate the extent of the injury and failing to clean and anesthetize the wound prior to suturing. Dr. Pearl argues that the failure to evaluate the injury was not alleged in the complaint. The Board responds that because the complaint alleged the size of the wound, there was notice that the extent of the injury was at issue.

The Court will not review this count. The district court determined that there was not substantial and competent evidence to support the Board's findings. The Board has chosen not to dispute this determination. The record therefore establishes that the Board's decision on Count Two is not supported by substantial evidence and this Court does not need to reach the issue.

### C. Count Three

Count Three of the complaint charges:

On or about September 13, 1995, Patient O.N., a 52–year–old male, was admitted to the Minidoka Memorial Hospital emergency room in Rupert, Idaho, with a wound to the left hand. The wound was described as being located on the left third digit extending from the first distal knuckle to about the medial knuckle. Respondent provided medical care and treatment to patient O.N. during his admission which was below the standard of care, in the Respondent failed to clean the wound prior to suturing.

The Board found that Pearl failed to obtain surgical consultation, failed to appropriately clean the wound, and delayed closing the extensive wound. The Board admits that Count Three does not allege failure to obtain surgical consultation or a delay in closing the wound but does allege that Pearl failed to properly clean the wound. The Board's decision is based in part, therefore, on allegations not alleged in the complaint. Dr. Pearl was only on notice of a cut that she failed to clean.

### D. Count Four

Count Four of the complaint charges:

On or about October 17, 1995, Patient M.P., a 9 year old male, was admitted to

the Minidoka Memorial Hospital emergency room, in Rupert, Idaho, with intractable vomiting. Respondent provided medical care and treatment to Patient M.P. during his admission which was below the standard of care. The patient had signs and symptoms of dehydration and bilious vomiting. Multiple antiemetics were used prior to adequately discerning the cause of clinical symptoms (for example, rule out diabetic ketoacidosis, rule out intestinal obstruction). As rule out diabetes mellitus was included in the admission diagnosis, the use of D5½ NS is inappropriate. D5½ NS is not an appropriate intravenous rehydration fluid. The amount of potassium used in the intravenous fluid is inappropriate for a pediatric patient. After rehydration and potassium infusion, no laboratory analyzes were ordered.

The Board found that Pearl had performed an inadequate workup to evaluate the cause of vomiting, used an inappropriate dose of potassium, ordered an improper IV solution containing dextrose and failed to order follow up lab work. Count Four clearly alleges these violations—it alleges that Pearl failed to discern the cause of the vomiting, inappropriately ordered an IV and failed to order a laboratory analysis. There was no due process violation regarding Count Four.

■ Pearl also argues that the Board's decision is not supported by substantial and competent evidence. The basis for Pearl's argument, however, is basically that there was conflicting evidence. Dr. Pearl argues that "each witness testified differently regarding the use of potassium and dehydration."

The Board's decision is based on the testimony of Dr. Wayment and Dr. Jonakin. The Board noted that Pearl had ordered potassium because the patient was deficient in potassium, but admitted that lab work was not available to her at the time she ordered potassium. Dr. Wayment testified that if one suspects that a patient is diabetic, it is inappropriate to order an IV solution containing dextrose. Both Dr. Wayment and Dr. Jonakin testified that Pearl violated the standard of care by failing to order follow-up lab work when the treatment was completed.

The Board noted that there is no documentation that Pearl examined the patient's abdomen when she should have. Dr. Jonakin testified that Pearl needed to determine the cause of vomiting, and that using multiple antiemetics, as Pearl did, can mask the cause of vomiting.

■ Pearl argues that Dr. Wayment's treatment of this patient was substandard, and that the Board completely disregarded her own testimony. Dr. Pearl does defend her use of multiple antiemetics by testifying that she was concerned that the patient had been vomiting for so long that he could have a less common affliction, such as tears in the esophagus, and that the patient was given multiple drugs in small doses to try to stop the vomiting. However, Dr. Pearl does not refute the testimony that is in the record or relied upon by the Board. Dr. Wayment and Dr. Jonakin both testified that Dr. Pearl's care was below the standard of care for the community. Dr. Pearl has only presented evidence that there is some conflict of evidence in the record. The existence of conflicting evidence is not a basis to reverse the Board's determination.

### E. Count Five

■ Count Five of the complaint charges: On or about November 1, 1995, Patient B.P., a 65–year–old female, was admitted to the Minidoka Memorial Hospital emergency room, in Rupert, Idaho, complaining of feeling a lump in her throat. Respondent provided medical care and treatment to patient B.P. during her admission which was below the standard of care. The patient's history is compatible with esophageal stricture. Most likely etiologies, given the patient's age, include hiatal hernia, reflux esophagitis, and neoplasm. There is no description of physical findings to support thrush.

The Board found that Pearl failed to conduct an adequate examination to rule out common etiologies and diagnosed and treated thrush without laboratory confirmation. The allegation in Count Five is that Dr. Pearl did not have the findings necessary to support a diagnosis of thrush. This is what the Board

found. As such, there is no due process violation with the Board's findings.

■ Dr. Pearl also argues that the allegations in this Count are not supported by substantial and competent evidence. The Board noted that when the patient arrived, she complained that it felt like a blood pressure pill was stuck in her throat. Dr. Pearl's notes indicate that the pill was taken the night before and it felt like it was stuck in the patient's throat. Dr. Pearl diagnosed thrush, ordered medication, and instructed the patient to see Dr. Wayment several days later. The patient was discharged nine minutes after Dr. Pearl arrived.

Dr. Wayment testified that Dr. Pearl violated the standard of care by diagnosing thrush without doing a culture and should have evaluated the patient for esophageal stricture. Dr. Wayment doubted that the patient had ever had thrush. Dr. Jonakin concurred with Dr. Wayment and testified that Dr. Pearl did not perform an adequate evaluation. Dr. Pearl argues that Dr. Jonakin testified that "there could have been signs of thrush," but does not refute the allegations that thrush should not be diagnosed without performing a culture. The decision of the Board on this Count is supported by substantial and competent evidence.

### F. Count Six

■ Count Six of the complaint charges: On or about September 28, 1995, Patient E.P., a 46–year–old female, was admitted to the Minidoka Memorial Hospital emergency room, in Rupert, Idaho, with a complaint of headache. Respondent provided medical care and treatment to Patient E.P. during her admission which was below the standard of care, in that patient E.P. was discharged from the emergency room by the Respondent without appropriate evaluation and treatment of hypoxemia.

The Board found that on September 24, 25, 26, and 28, Pearl had failed to evaluate and address the patient's hypoxemia. The only date contained in Count Six is September 28. The Board admits the findings need to be restricted to the date of September 28. The Board's decision is based, at least in part, on matters not alleged in the complaint. This was a due process violation.

### G. Count Seven

Count Seven of the complaint was dismissed by the Board.

### H. Count Eight

■ Count Eight of the complaint charges:

On or about October 27, 1995, Patient E.H., a 28–year–old female, was admitted to Minidoka Memorial Hospital in Rupert, Idaho, with a 28–week gestation pregnancy with right pyelonephritis. Respondent provided medical care and treatment to Patient E.H. during her admission which was below the standard of care. It is outside the usual scope of practice in emergency medical to provide inpatient care of a high risk pregnancy (28 week gestation, pyelonephritis, preterm labor).

The Board found "the care provided to this 28 year old pregnant female ... to be below the standard of care and beyond the usual scope of emergency physicians to treat a high risk, 28 week gestation, pregnancy." Count Eight alleges that it was improper to provide inpatient care of such a pregnancy, and the Board found that it was outside the scope of emergency physicians to treat this type of pregnancy. Dr. Pearl's due process argument on this issue is that Count Eight does not allege a violation of the standard of care, but rather that her actions were outside the usual scope of emergency care. However, it is clear that she was on notice of what the claimed violation was. There was no due process violation regarding Count Eight.

■ Pearl also argues that the Board's decision is not supported by substantial and competent evidence. The Board noted that Dr. Pearl was asked by Dr. Saurey to cover for him while he was gone. Dr. Pearl had no OB privileges in the hospital. That night, the patient began having contractions, and the nurse testified that the patient was going into premature labor. Dr. Pearl ordered valium, which the nurse refuted and refused to give, and Dr. Pearl administered the valium

herself. The nurse testified that she called Dr. Wayment to advise him that Dr. Pearl had administered valium. Dr. Wayment testified that he got the call from the nurse, although Dr. Pearl testified that it was she who called Dr. Wayment.

Dr. Wayment arrived and ordered magnesium sulfate to stop the premature labor. Dr. Wayment testified that it was a violation of the standard of care to treat premature labor with valium, and that it was a violation for Dr. Pearl to have taken over inpatient OB without obstetrical privileges.

Dr. Pearl's argument concerns only her OB privileges and the fact that she was working at the request of Dr. Saurey. Dr. Pearl does not address the improper use of valium on the patient, which would constitute improper emergency care of a high risk pregnancy. Because there is evidence from Dr. Wayment that Dr. Pearl violated the standard of care, this decision of the Board is supported by substantial and competent evidence.

## I. Summary

Counts One, Three, and Six contain findings that are based on facts not pled. As such, Dr. Pearl was not put on adequate notice and this constitutes a due process violation. Count Two is not supported by substantial and competent evidence, as the Board concedes. Counts Four, Five, and Eight are supported by substantial and competent evidence.

## V.

## A NEW HEARING IS NOT REQUIRED ON REMAND

■ The revised statutes eliminate the Board of Professional Discipline and have replaced it with the Committee on Professional Discipline. I.C. § 54–1806 now requires that a hearing officer's recommended order be reviewed by the Committee, which is then reviewed by the Board of Medicine. Dr. Pearl argues that the BPD no longer exists and that its decision must, therefore, be reversed because the case cannot be remanded to a Board that does not exist. Dr. Pearl is correct that the BPD no longer

exists. The change in procedures does not warrant reversal of the decision of the BPD.

## VI.

## CONCLUSION

Dr. Pearl was not entitled to a hearing before a panel of licensed physicians. Statutes in effect at that time authorized hearing officers to conduct evidentiary hearings and make recommendations. The case is remanded to the Board of Medicine to reconsider appropriate action as a result of the violations determined in Counts Four, Five, and Eight. Neither party is awarded costs or attorney fees.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN, concur.