J. JONES, Chief Justice,
concurring.
I concur in the Court’s opinion but write separately to express continuing concern about the Industrial Commission’s handling of some of the decisions made by its referees. In a number of worker’s compensation cases that have recently come before the Court, the Commission has summarily discarded the referee’s findings of fact, conclusions of law and recommendation, and made its own. The Commission is not bound by the referee’s decision but the Commission rarely explains why it has made a differing determination of a case that was actually heard by a referee.
This case was heard by Referee Douglas Donahue, who issued his findings of fact, conclusions of law, and recommendation on December 17, 2012. However, on January 9, 2013, the Commission entered its own findings of fact, conclusions of law and order, stating “[t]he undersigned Commissioners have chosen not to adopt the Referee’s recommendation.” The Commission’s decision does not indicate that any specific findings of the Referee were adopted or incorporated by the Commission. As it turns out, the result for the Claimant was basically the same but the Commission tweaked the Referee’s finding as to the Claimant’s credibility and arrived at its conclusions based upon somewhat different factual and legal analyses.
The Commission’s analysis of a case can certainly depart from that of a referee. The Commission is not necessarily bound to the factual findings of the referee, but when its factual findings differ the Commission should explain the reasons for the departure. Although the Commission has its own procedural rules and is not bound by the Idaho Administrative Procedure Act (ID APA), there is no reason why the Commission should not observe accepted practice for IDAPA proceedings where the administrative agency employs the services of a hearing officer. In Pearl v. Idaho State Bd. of Medicine, 137 Idaho 107, 112, 44 P.3d 1162, 1167 (2002), the Court noted, “there is authority for courts to impose on the agency an obligation of reasoned decision making that includes a duty to explain why the agency differed from the administrative law judge.” And, in Pines v. Idaho State Bd. of Medicine, 158 Idaho 745, 750-51, 351 P.3d 1203, 1208-09 (2015), we said, “The Board [of Medicine] does not need to accept the hearing (officer’s factual determinations. Pearl, 137 Idaho at 114, 44 P.3d at 1169. But, where the Board’s findings disagree with those of the hearing officer, we more closely scrutinize those findings, and the Board has a duty to explain *589 why its findings differ.” Here, the Commission offered no reasons for its decision to jettison the Referee’s findings and decision.
Were this the only case where the Commission disregarded a referee’s findings and conclusions, it might not be a matter of concern. However, counsel in a number of recent cases have stated in oral argument that there has been an increase in such instances and the Court has heard at least three other such cases within the last several months. In response to an inquiry during argument in this case, as to whether there was an increase in the number of cáses where the Commission disregarded a referee’s decision, counsel for ISIF responded, “Yes, and there are, there frankly are a number of decisions in which the Commission is 360 degrees from the original referee’s decision. It is not unusual.” In response to an observation that it was “a little bit troubling” for the Commission to disregard the referee’s decision “without saying why they did it,” counsel responded: “I would, I would agree with the
court.... There’s a number of cases where they’ve completely reversed the referee and written a completely different decision.”
Counsel for the Claimant then stated: Justice Jones, I would like to address your inquiry to counsel. I would encourage the Court to look at the Industrial Commission decisions in Davis v. US. Silver [I.C.2008-031273]. In Davis, the referee entered proposed findings of fact and conclusions of law and recommended order and found 100 percent for the injured worker, Mr. Davis, and awarded attorneys fees. The Commission then took that decision from the referee, and did not adopt it, and denied all benefits to the injured worker. That decision was signed by the employer representative and the attorney representative. It was not signed by the employee representative. There was a motion for reconsideration filed from the Commission’s decision. The order on the reconsideration reversed the Commission’s deeision, granted all benefits to the injured worker and left out attorneys fees. And it was signed only by the employee representative and attorney representative.
Of further concern, was Claimant’s counsel’s report regarding a panel of Commission referees at a State Bar function:
There was a court reporter who took a video of the discussion at the State Bar with the compensation section at the end of February of a panel of referees. And they were talking about cases being taken away irom them and I would encourage you to get a copy of that. I can provide you a copy of it if you wish. I mean, the court reporter is out of Boise and it’s very enlightening as to what the process is. Essentially, the referee’s decision comes in, the Commissioners look at it and they want to make whatever changes they want, and then they specifically said that the Commissioners always give the referee the opportunity to sign the changed opinion. If they don’t, then they’ll issue their own. One referee, Referee Marsters, as you see in the video, made the comment that the decision goes there and they make changes for whatever perception they have and sometimes for policy reasons. And, you know, it just baffled me. I wasn’t present to ask a follow-up question. I reviewed the video. But I am unclear what a policy reason is. There’s statutes and there’s case law. Is there some other policy reason?
If Commissioners are urging or pressuring referees to change their decisions, it is a certainly a matter of concern. The referee’s decision should be filed as written so that his or her credibility determinations are preserved in the record. A referee, just like any other hearing officer, acts as the eyes and ears of the agency. When the Commissioners do not see or hear the witnesses testifying, they are necessarily reliant upon the referee to make findings on a range of issues, many of which hinge upon determinations of observational credibility.[2] Those findings *590 should not be changed without explanation by the Commission.
Here, the Referee and the Commission both determined that the Claimant suffered partial permanent impairment of 2% of the whole person for the October 2006 industrial injury, but was not entitled to a disability rating exceeding the 2% PPI rating for that injury. The principal difference between the Referee and the Commission was the extent of Claimant’s preexisting disability (43%, according to the Referee, and 50-75%, according to the Commission). Regardless of this difference, the outcome recommended by the Referee was essentially the same as that which was ordered by the Commission.
The more concerning part of the Commission’s order has to do with determining the credibility of the Claimant at the hearing. The Referee, who conducted the hearing, concluded: “Claimant is credible. Her demeanor and testimony were consistent with the other evidence in the record.” However, without personally observing the Claimant as she testified, the Commissioners concluded: “Except as qualified below, Claimant is generally credible. The Commission finds no reason to disturb the Referee’s findings and observations on Claimant’s presentation or credibility.” It is unknown how the Commission could reach the conclusion in the second sentence because it discarded the Referee’s decision and does not appear to have explicitly adopted or incorporated his finding on credibility or any other issue.
The Commission then appears to contradict the Referee’s credibility finding in two respects. First, the Commission says “we have found that Claimant’s testimony concerning the significant worsening of her condition following the subject accident should be given less weight than the opinions of Drs. Stevens and Larson.” Then, the Commission states: “We find Claimant’s testimony that she experienced a permanent worsening of her condition following the October 31, 2006 accident to be unpersuasive.” These appear to be observational credibility determinations, at least in part. It is unclear how the Commission, not having attended the hearing, could find contrary to the Referee’s credibility finding. Had the ultimate outcome of the case turned upon the issue of Claimant’s credibility, I would have voted to vacate and remand. Since it did not have a discernible bearing on the outcome, I can concur in the opinion.
Justice W. JONES concurs.

. In Knowlton v. Wood River Med. Ctr., 151 Idaho 135, 144, 254 P.3d 36, 45 (2011), the Court said:
Determining the credibility of witnesses and evidence is a matter within the province of the Commission ... When analyzing the Commission's findings regarding credibility, this Court has bifurcated the issue into two categories, "observational credibility" and "substantive credibility.” Observational credibility "goes to the demeanor of the appellant on the witness *590 stand and it requires that the Commission actually be present for the hearing in order to judge it.” Id. In contrast, substantive credibility "may be judged on the grounds of numerous inaccuracies or conflicting facts and does not require the presence of the Commission at the hearing.” (citations omitted).