# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 43564

| | | |
|---|---|---|
| IN THE MATTER OF APPLICATION FOR PERMIT NO. 36-16979 IN THE NAME OF NORTH SNAKE GROUND WATER DISTRICT, ET AL. | ) ) ) ) ) | |
| NORTH SNAKE GROUND WATER DISTRICT, MAGIC VALLEY GROUND WATER DISTRICT and SOUTHWEST IRRIGATION DISTRICT, | ) ) ) ) ) ) | |
| Petitioners-Respondents on Appeal, | ) ) | Boise, April 2016 Term |
| v. | ) ) | 2016 Opinion No. 61 |
| IDAHO DEPARTMENT OF WATER RESOURCES and GARY SPACKMAN, in his official capacity as Director of the Idaho Department of Water Resources, | ) ) ) ) ) | Filed: May 27, 2016 Stephen W. Kenyon, Clerk |
| Respondents-Respondents on Appeal, | ) ) | |
| v. | ) ) | |
| RANGEN INC., | ) ) | |
| Intervenor-Appellant on Appeal. | ) ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Eric J. Wildman, District Judge.

The decision of the district court is affirmed.

Brody Law Office, PLLC, Rupert; Haemmerle Law Office, PLLC, Hailey; May, Browning & May, PLLC, Boise, for appellant Rangen, Inc. Fritz X. Haemmerle argued.

Racine Olson Nye Budge & Bailey, Chartered, Pocatello, for respondents Water Districts. Randall C. Budge argued.

Hon. Lawrence G. Wasden, Attorney General, for respondents Idaho Department of Water Resources and Gary Spackman.

_____

J. JONES, Chief Justice

This case springs from an application for permit to obtain a water right filed by the respondents, North Snake Ground Water District, Magic Valley Ground Water District and Southwest Irrigation District ("the Districts"), to appropriate water from Billingsley Creek on real property owned by appellant Rangen, Inc. After the Director of the Idaho Department of Water Resources ("the Department") denied the application in a final order, the Districts petitioned for judicial review. The district court set aside the Director's final order. Rangen appealed.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

This matter concerns an application to appropriate water filed by the Districts on April 3, 2013. The Districts applied to appropriate 12 cfs of water from unnamed springs and Billingsley Creek for two purposes: mitigation for irrigation and fish propagation. The Districts filed the application in response to a delivery call initiated by Rangen in December 2011. In the delivery call, Rangen sought to curtail various water rights of the Districts' members, alleging that junior priority ground water pumping was causing material injury to two of its senior water rights.

The Director issued a curtailment order in Rangen's delivery call proceeding in January 2014, after concluding that Rangen was being materially injured by the junior priority ground water pumping. The order noted that junior rightholders subject to curtailment could continue pumping if an adequate mitigation plan were proposed and approved. The Districts intended to use the new water right to satisfy mitigation obligations and thereby avoid curtailment.

The Districts' application proposes to divert 12 cfs from Billingsley Creek. The application designates a place of use and point of diversion located entirely on Rangen's real property. As amended, the application indicates that 4 cfs would be diverted via the construction and implementation of a pump station and 8 cfs would be diverted through Rangen's existing Bridge Diversion. However, Lynn Carlquist, a director of the North Snake Ground Water District who testified on the Districts' behalf, indicated that the purpose of the pump would be to deliver water to the point of use specified in a mitigation order. Wayne Courtney, Rangen's executive vice president, testified that Rangen does not desire and would not benefit from the installation or operation of the pump system. Nonetheless, the purpose of the pump would be to convey mitigation water to parts of the Rangen facility.

2

Rangen has historically diverted water from Billingsley Creek. However, this Court recently ruled that Rangen's water rights permit it to divert water from the mouth of the Martin-Curren Tunnel but not from the springs on the talus slope from which the mouth of the tunnel protrudes. *Rangen, Inc. v. Idaho Dep't of Water Res.*, 159 Idaho 798, 806, 367 P.3d 193, 201 (2016). We also ruled that Rangen's water rights do not permit it to divert water at the so-called Bridge Diversion. *Id.* at 807, 367 P.3d at 202. As a result, Rangen has lacked the legal authority to appropriate water from the headwaters of Billingsley Creek since Rangen's water rights were adjudicated in 1997.

Before the Department ruled on the Districts' April 2013 application, Rangen filed a competing application on February 3, 2014. Rangen's application sought to divert 59 cfs from Billingsley Creek for fish propagation, with the same source and point of diversion elements as the Districts had requested. On January 2, 2015, Rangen's application was approved for 28.1 cfs for fish propagation with a priority date of February 3, 2014. This permit has apparently not been challenged.

Department employee James Cefalo presided over a hearing on the Districts' application on September 17, 2014. He subsequently issued a Preliminary Order Issuing Permit in which he found that the application was made in good faith, did not conflict with the local public interest, and otherwise satisfied the necessary requirements. Therefore, he approved a conditional permit authorizing the Districts to appropriate 12 cfs from Billingsley Creek for mitigation purposes with a priority date of April 3, 2013.

Rangen filed a protest of the hearing officer's preliminary order with the Director. After the parties briefed the issues, the Director subsequently issued a final order overturning the hearing officer's decision and denying the application. The Director concluded that the Districts' application was made in bad faith and that the application was not in the local public interest.

The Districts petitioned for judicial review, asserting that the Director abused his discretion and exceeded his authority in denying their application. On judicial review, the district court set aside the Director's final order, concluding that the application was neither made in bad faith nor counter to the local public interest. The district court also rejected Rangen's arguments that the Districts' application was incomplete or speculative and that mitigation is not a recognized beneficial use of water under Idaho law.

Rangen timely appealed the district court's order setting aside the Director's final order. Rangen raises substantially the same arguments on appeal as it did before the district court.

## II.
## ISSUES PRESENTED ON APPEAL

1. Whether the district court erred in setting aside the Director's determination that the Districts' application was made in bad faith.

2. Whether the district court erred in setting aside the Director's determination that the Districts' application was not in the local public interest.

3. Whether the district court erred in upholding the Director's determination that the Districts' application was complete.

4. Whether the district court erred in upholding the Director's determination that mitigation is a viable beneficial use.

5. Whether the district court erred in determining that the Districts' application was not made for speculative purposes.

6. Whether the district court erred in determining that the Director's final order prejudiced the Districts' substantial rights.

## III.
## STANDARD OF REVIEW

In an appeal from a district court where the court was acting in its appellate capacity under the Idaho Administrative Procedure Act ("IDAPA"), "we review the decision of the district court to determine whether it correctly decided the issues presented to it." *Clear Springs Foods v. Spackman*, 150 Idaho 790, 797, 252 P.3d 71, 78 (2011). However, we review the agency record independently of the district court's decision. *Spencer v. Kootenai Cnty.*, 145 Idaho 448, 452, 180 P.3d 487, 491 (2008). A reviewing court "defers to the agency's findings of fact unless they are clearly erroneous," and "the agency's factual determinations are binding on the reviewing court, even when there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record." *A & B Irrigation Dist. v. Idaho Dep't of Water Res.*, 153 Idaho 500, 505–06, 284 P.3d 225, 230–31 (2012). Substantial evidence is "relevant evidence that a reasonable mind might accept to support a conclusion." *In re Idaho Dep't of Water Res. Amended Final Order Creating Water Dist. No. 170*, 148 Idaho 200, 212, 220 P.3d 318, 330 (2009) (quoting *Pearl v. Bd. of Prof'l Discipline of Idaho State Bd. of Med.*, 137 Idaho 107, 112, 44 P.3d 1162, 1167 (2002)).

4

Idaho Code section 67-5279(3) provides that the district court must affirm the agency action unless it

> finds that the agency's findings, inferences, conclusions, or decisions are:
>
> (a) in violation of constitutional or statutory provisions;
> (b) in excess of the statutory authority of the agency;
> (c) made upon unlawful procedure;
> (d) not supported by substantial evidence on the record as a whole; or
> (e) arbitrary, capricious, or an abuse of discretion.

I.C. § 67-5279(3); *Clear Springs Foods*, 150 Idaho at 796, 252 P.3d at 77. Even if one of these conditions is met, an "agency action shall be affirmed unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4). "If the agency action is not affirmed, it shall be set aside, in whole or in part, and remanded for further proceedings as necessary." I.C. § 67-5279(3).

## IV.
## ANALYSIS

**A. The district court did not err in setting aside the Director's determination that the Districts' application was made in bad faith.**

Idaho law allows the Director to deny an application to appropriate water in a variety of circumstances, including "where it appears to the satisfaction of the director that such application is not made in good faith." I.C. § 42-203A(5)(c). "Good faith" is not defined by statute, but the Department's administrative rules provide criteria for evaluating good faith.

> The criteria requiring that the Director evaluate whether an application is made in good faith or whether it is made for delay or speculative purposes requires an analysis of the intentions of the applicant with respect to the filing and diligent pursuit of application requirements. The judgment of another person's intent can only be based upon the substantive actions that encompass the proposed project. . . . An application will be found to have been made in good faith if:
>
>> i. The applicant shall have legal access to the property necessary to construct and operate the proposed project, [or] has the authority to exercise eminent domain authority to obtain such access . . . ; and
>> ii. The applicant is in the process of obtaining other permits needed to construct and operate the project; and
>> iii. There are no obvious impediments that prevent the successful completion of the project.

IDAPA 37.03.08.045.01.c.

The Director concluded that the Districts' application was made in bad faith. The Director determined there to be a threshold impediment to "completion of the project" for a majority of the quantity of water sought to be appropriated. To perfect a project for a water right,

5

the Director asserted, there inherently must be completion of works for beneficial use. The Director stated that "[t]here is no 'project' and consequently cannot be a 'completion of the project' for the 8.0 cfs, because the 8.0 cfs will be diverted through the existing Bridge Diversion without any construction of a project or any completion of works for beneficial use." The Director concluded that the Districts' intent was to assign any water right granted under the application to Rangen, rather than to construct any works or complete any project, and that the absence of a "project" necessitated the conclusion that the application was filed in bad faith.

The district court set aside the Director's conclusion on this point, finding that it was not supported by the record. Reviewing the record, the district court found that the Districts' application proposes to divert water from two separate points of diversion via two separate project works. Four cfs would be diverted via a newly constructed pump station and 8 cfs would be diverted via the existing Bridge Diversion. The district court observed that there is no dispute that the first diversion contemplates the construction of project works. The Director apparently ignored this construction project, concluding that "for a *majority* of the quantity of water sought to be appropriated" the absence of a construction project required a finding of bad faith. (emphasis added). Nothing in the plain language of IDAPA 37.03.08.045.01.c appears to authorize the Director to ignore projects involving less than a majority of the water sought to be appropriated in order to support a finding of bad faith.

The district court found that the Director interpreted IDAPA 37.03.08.045.01.c to require new construction or a new project and that this requirement is counter to Idaho water law and leads to absurd results. It found that such an interpretation conflicts with the constitutional guarantee that "[t]he right to divert and appropriate the unappropriated waters of any natural stream to beneficial uses, shall never be denied." Idaho Const. art. XV, § 3. It also found that it would be absurd to deny a water right permit application where the applicant intends to divert water and apply it to a beneficial use through utilization of pre-existing project works. To illustrate, the district court gave the example of a homeowner who realizes that an existing well requires a water right. Under the Director's interpretation, the homeowner's application would have been filed in bad faith because it proposed no construction of new project works. This is an absurd result. After setting aside the Director's conclusion that the lack of new project works meant the application was filed in bad faith, the district court independently examined the criteria in IDAPA 37.03.08.045.01.c and concluded that there was no evidence of bad faith.

On appeal, Rangen acknowledges that a proposed project may use existing physical structures but contends that there still must be some identifiable project by which the applicant intends to beneficially use the water. Rangen argues that the Districts' application does not propose a project but, instead, that the Districts merely propose to watch Rangen continue to divert and beneficially use the water in the same way it has for more than fifty years. In making this argument, Rangen ignores that it has had no legal right to divert water from Billingsley Creek since at least 1997. Therefore, from a legal standpoint, the water was unappropriated during that period. *See* I.C. § 42-201.

The district court correctly held that IDAPA 37.03.08.045.01.c does not require new construction or a new project. The rule does not contain the word "new." Contrary to the Director's conclusion, there is a project as contemplated by the rule, both for the 8 cfs part and the 4 cfs part. The existing Bridge Diversion is a part of a project that has already been completed and is intended to be utilized by the Districts as a "project work" to allow it to complete the 8 cfs part of its project. With regard to the 4 cfs part, the Districts propose to construct and operate a pump station. That project certainly satisfies the requirements set forth in IDAPA 37.03.08.045.01.c. Either of these projects, standing alone, would preclude a conclusion of bad faith on the grounds used by the Director. There was simply no reasonable way on this record for the Director to conclude that the application was filed in bad faith. I.C. § 67-5279(3)(d). For this reason, we affirm the district court's order setting aside the Director's contrary conclusion.

## B. The district court did not err in setting aside the Director's determination that the Districts' application was not in the local public interest.

Idaho law allows the Director to deny an application to appropriate water where the proposed use "will conflict with the local public interest as defined in section 42-202B, Idaho Code." I.C. § 42-203A(5)(e). Section 42-202B defines "local public interest" as "the interests that the people in the area directly affected by a proposed water use have in the effects of such use on the public water resource." The Director concluded that the Districts' application was not in the local public interest for two reasons. First, the Director found that approval of the Districts' application would establish an unacceptable precedent in other delivery call proceedings that are or may be pending. The Director regarded the application as "the epitome of a mitigation shell game," finding it objectionable for the Districts to try to mitigate by delivering water to Rangen that Rangen has been using for fifty years. The Director noted that the Districts'

application brings no new water to the already diminished flows of the Curren Tunnel or headwaters of Billingsley Creek. Second, the Director concluded that it is inconsistent with the local public interest and inappropriate for the Districts to exercise their power of eminent domain to facilitate obtaining a water right for mitigation wholly located on land owned by Rangen.

The district court rejected both of these reasons, setting aside the Director's conclusion that the application was not in the local public interest. The district court noted that the Director's ability to evaluate the local public interest related to a proposed water use is statutorily limited and that neither of the Director's rationales were authorized by the statute. The statute authorizes only evaluation of "the effects of [the proposed] use on the public water resource" and neither of the Director's reasons for his conclusion relate to such effects. I.C. § 42-202B(3). The district court expressly noted that section 42-202B(3) was amended in 2003 for the specific purpose of narrowing the scope of an evaluation of local public interest. *Chisholm v. Idaho Dep't of Water Res.*, 142 Idaho 159, 164 n.3, 125 P.3d 515, 520 n.3 (2005). The court further noted that the Director appeared to penalize the Districts for being first in time, in direct contravention of the mandate in the Idaho Constitution that first in time is first in right. *See* Idaho Const. art. XV, § 3. Nor, the district court concluded, is it relevant that the Districts did not propose to bring new water to the Curren Tunnel or Billingsley Creek. An application to appropriate water, by its very definition, does not bring new water to a water system, but rather seeks to appropriate unappropriated water.

The district court also rejected the Director's rationale that it would be inconsistent with the local public interest for the Districts to exercise their power of eminent domain to obtain a water right for mitigation. The Idaho Legislature has expressly granted ground water districts "the power of eminent domain in the manner provided by law for the condemnation of private property for easements, rights-of-way, and other rights of access to property necessary to the exercise of the mitigation powers herein granted." I.C. § 42-5224(13). The district court found that the Director lacks the authority to determine when the use of that power is appropriate and, further, that the Director failed to articulate how it related to any effects on the public water resource.

On appeal, Rangen argues that the Director's interpretation of "local public interest" should be given great weight. Rangen quotes a 1988 case for the proposition that "[t]he determination of what elements of the public interest are impacted, and what the public interest

8

requires, is committed to Water Resources' sound discretion." *Matter of Permit No. 47-7680*, 114 Idaho 600, 607, 759 P.2d 891, 898 (1988). Rangen then quotes an almost identical statement from the Statement of Purpose for the 2003 legislative amendment narrowing the definition of "local public interest": "The determination of what elements of the public interest are impacted, and what the public interest requires, is committe[d] to Water Resources' sound discretion."[1] Statement of Purpose, H.B. 284, 2003 Leg., RS Doc. No. 13046, *available at* http://legislature.idaho.gov/legislation/2003/H0284.html#sop. Rangen appears to argue that this non-binding Statement of Purpose supersedes the language of the statute.

The Director's interpretation of "local public interest" in this case is entitled to no deference because it is inconsistent with the plain language of the statutory definition provided in Idaho Code section 42-202B. The Director appears to have entirely ignored section 42-202B in favor of an alternate definition of "local public interest," allowing him to evaluate whether a proposed use brings new water or is a proper use of eminent domain authority. Any interpretation of "local public interest" that is inconsistent with the statutory definition of that term cannot be reasonable. Further, because the definition of the term "local public interest" is expressly provided by statute, the Director lacks the authority to supply his own interpretation. *See J.R. Simplot Co., Inc. v. Idaho State Tax Comm'n*, 120 Idaho 849, 860, 820 P.2d 1206, 1217 (1991) ("when an agency construction clearly ignores the statute which it professes to interpret, then the Court need not pay heed to the statutory construction.").

Nor is the Director's conclusion regarding local public interest supported by the record. The Director cited no evidence relevant to the statutory definition of local public interest in the pertinent section of the final order. Because the Director exceeded his authority by evaluating local public interest based on factors not contemplated in the statutory definition, the district court did not err in setting aside the Director's conclusion. We affirm the district court's order setting aside the Director's conclusion that the Districts' application was not in the local public interest.

---

[1] Rangen apparently overlooks the very next sentence from the Statement of Purpose: "In recent years, some transactions have been delayed by protests based on a broad range of social, economic and environmental policy issues having nothing to do with the impact of the proposed action on the public's water resource." Given that the Districts' proposed use appears to have no effect whatsoever on the properly-evaluated local public interest, it is fair to consider whether Rangen's resistance to the application is just the sort of protest the Legislature sought to forestall. Statement of Purpose, H.B. 284, 2003 Leg., RS Doc. No. 13046, *available at* http://legislature.idaho.gov/legislation/2003/H0284.html#sop

**C. The district court did not err in upholding the Director's determination that the Districts' application was complete.**

Rangen also argues that the Districts' application should have been denied because it was incomplete. Rangen asserts that there was no evidence the application was properly executed. IDAPA 37.03.08.035.03.b.xii requires that an application for permit "shall be signed by the applicant listed on the application or evidence must be submitted to show that the signator has authority to sign the application." The Department hearing officer, the Director, and the district court each found that the application was properly executed and otherwise complete.

The district court found that

> [t]he Districts' application and subsequent amended applications were signed by Thomas J. Budge, the Districts' attorney of record. Lynn Carlquist, as representative of the Districts, testified that Budge has represented the Districts since 2007, that the Districts were consulted prior to the filing of the application, and that Budge had authority to file the application on behalf of the Districts. . . . Therefore, the Court finds that the Director did not abuse his discretion in making the determination that the Districts' application was properly executed, and further finds that his decision in this respect is supported by substantial evidence in the record.

Rangen alleges a variety of perceived deficiencies in the Districts' application: the application does not indicate which, if any, of the individual ground water districts Mr. Budge was signing for; none of the individual districts' addresses are included; there is no evidence of any authority of Mr. Budge to sign for any of the districts; some districts failed to introduce evidence of corporate resolutions authorizing Mr. Budge to sign for them; some districts failed to introduce evidence of powers of attorney authorizing Mr. Budge to represent them; and some districts violated public meetings and open meetings laws by making the decision to authorize Mr. Budge to file the application during private telephone calls rather than properly noticed public meetings.

None of Rangen's arguments undermine either of two basic facts. First, the rule in question requires merely "evidence . . . to show that the signator has authority to sign the application." IDAPA 37.03.08.035.03.b.xii. Second, the Director found such evidence in the form of Lynn Carlquist's testimony that Mr. Budge was authorized to file the application. "The Court does not substitute its judgment as to the weight of evidence presented, Idaho Code § 67-5279(1), but instead defers to the agency's findings of facts unless they are clearly erroneous." *Chisholm*, 142 Idaho at 162, 125 P.3d at 518. "When conflicting evidence is presented the

10

agency's findings must be sustained on appeal, as long as they are supported by substantial and competent evidence." *Id.* On the record before us, it does not appear that the Director's findings were clearly erroneous. The district court, therefore, was correct in affirming the Director's conclusion that the Districts' application was complete.

**D. The district court did not err in upholding the Director's determination that mitigation is a viable beneficial use.**

Rangen argues on appeal that "mitigation" is not a valid, recognized beneficial use of water under Idaho law. It claims that mitigation describes a "motivation" rather than a beneficial use, because it describes why a water right is being sought rather than how the water is being used. Rangen asserts that without both delivery and use of water, a beneficial use never occurs. Rangen further argues that the failure to identify an actual use makes it impossible to evaluate an application for a permit under the Idaho Code section 42-203A(5) factors.

The Director noted that the Department has previously recognized mitigation as a beneficial use, even though there is no definition for the beneficial use of "mitigation" in the Idaho Code or IDAPA. The Director pointed out that both Idaho Code section 42-5201 and the Department's Conjunctive Management Rules similarly define the term "mitigation plan." The Director adopted the hearing officer's conclusion that "in order for the proposed mitigation use to be viable, it must prevent material injury to senior water rights or compensate senior water right holders for material injury." Applying this conclusion, the Director further concluded that because the Districts' application proposes to compensate Rangen for diminishment of the source listed on Rangen's water rights (the Curren Tunnel) by delivering water from a separate source (Billingsley Creek), the beneficial use described in the Districts' application falls within the definition of mitigation. Finally, the Director rejected the notion that a stated beneficial use of "mitigation" is not reviewable under the factors provided in Idaho Code section 42-203A(g). The Director also cited an example of an existing water right listing mitigation as a beneficial use. Water right no. 51-13067 designates the beneficial use as "mitigation from storage" without another identified use.

The district court affirmed the Director's conclusion that mitigation is a valid beneficial use, citing several examples where the Snake River Basin Adjudication Court has recognized the beneficial use of "mitigation." *E.g.*, *Partial Decrees*, SRBA Subcase Nos. 37-22631, 37-22632,

11

37-22633 (June 29, 2012); *Partial Decree*, SRBA Subcase No. 63-33511 (Mar. 3, 2014).[2] This only makes sense. The Districts were ordered to provide mitigation water to Rangen because it was not receiving the full amount of water to which it was entitled under its water rights as a result of the Districts' groundwater pumping in the ESPA. The Districts' purpose in filing their application here was to obtain the water necessary to replace the water of which Rangen was deprived. Rangen contends that the water of which it was deprived is necessary for fish propagation. Although the Districts will be providing the water, Rangen will be the end user of the water and it can hardly be said that Rangen will not put it to beneficial use.

The district court did not err in affirming the Director's conclusion that mitigation is a valid beneficial use. Mitigation has been recognized as a beneficial use in both agency and judicial proceedings. Nor is Rangen correct in asserting that mitigation does not or cannot constitute a delivery and use of water. Even though the Districts' application seeks a right to appropriate water that Rangen has historically used, that water was legally unappropriated at the time of the application. The Districts' proposal was to deliver Billingsley Creek water to Rangen via the Bridge Diversion to be used as mitigation water. There is nothing improper about mitigation as a beneficial use, either in the abstract or in the particular circumstances of this case. Therefore, we affirm the district court's determination that the Director's final order was correct in this respect.

## E. The district court did not err in determining that the Districts' application was not made for speculative purposes, as the record discloses that the Districts will furnish the mitigation water directly to Rangen.

Idaho law allows the Director to deny an application to appropriate water where "it appears to the director that such application . . . is made for delay or speculative purposes." I.C. § 42-203A(5). Speculation is defined as "an intention to obtain a permit to appropriate water without the intention of applying the water to beneficial use with reasonable diligence." IDAPA 37.03.08.045.01.c.

Although Rangen argued at the agency level that the Districts' application was speculative, the Director did not address the speculation arguments because he concluded the application was filed in bad faith. On judicial review, the district court concluded that the Districts' application was not speculative. The court found that there is no evidence in the record

---

[2] Copies of partial decrees and other orders entered in the SRBA Court are available at http://srba.idaho.gov/DOCSHT.HTM.

establishing a lack of intent by the Districts to apply the water to beneficial use with reasonable diligence. The court also declined to rule on Rangen's arguments regarding the ability of the Districts to exercise their eminent domain authority to perfect their application for permit, holding that those issues would be more appropriately addressed in the context of a challenge to a condemnation proceeding.

Procedurally, Rangen argues that the district court erred in independently concluding that the Districts' application was not made for speculative purposes. Rangen asserts that because the Director did not rule on the speculation issue, the district court should have remanded to the Director for further findings on the issue. "The absence of findings and conclusions may be disregarded by the appellate court only where the record is clear, and yields an obvious answer to the relevant question." *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 225, 646 P.2d 988, 996 (1982). Here, there is no dispute that the intent behind the application is to supply mitigation water to Rangen. The parties did not present factual disputes regarding the speculation issue, which they both addressed before the Director and the district court. Indeed, Rangen brought up the speculation issue on its own before the district court, primarily arguing the issue on legal grounds. From a factual standpoint, the record clearly indicates that the Districts' application was not made for speculative purposes, as the Districts intend to supply it directly to Rangen for fish propagation. Therefore, it was not error for the district court, sitting in its appellate capacity, to address the issue even though the Director did not do so in his final order.

Rangen also makes a substantive argument that the Districts' application is speculative. Citing cases from Colorado and Nevada but not Idaho, Rangen asserts that the well-established general rule throughout western, prior-appropriation states regarding speculation is that an appropriator must be the actual appropriator or have some agency relationship with the actual appropriator. Quoting Idaho law, Rangen argues that the "[l]ack of a possessory interest in the property designated as the place of use is speculation." *Lemmon v. Hardy*, 95 Idaho 778, 781, 519 P.2d 1168, 1171 (1974). Rangen asserts that the Districts lack a possessory interest because the place of use is entirely on Rangen's real property and it has not granted the Districts a right to use the property. Accordingly, Rangen reasons, the application is necessarily speculative. However, *Lemmon* itself acknowledges that mere lack of a possessory interest does not result in speculation when the applicant has the power to acquire a sufficient possessory interest by condemnation. *Id.* at 780–781, 519 P.2d at 1170–1171. Rangen fails to acknowledge this crucial

13

limitation, although it does argue at length on the issue of whether the Districts have the authority to exercise eminent domain against it.

Rangen further argues that the Districts have no way of obtaining the type of possessory interest necessary to perfect their application for permit. However, ground water districts are authorized by statute "[t]o have and exercise the power of eminent domain in the manner provided by law for the condemnation of private property for easements, rights-of-way, and other rights of access to property necessary to the exercise of the mitigation powers herein granted." I.C. § 42-5224(13). Rangen argues that the Districts nonetheless lack actual legal authority to condemn Rangen's property to complete the application.

Rangen appears to misquote IDAPA in its opening brief. Rangen asserts that "[t]he applicant shall have the legal access to the property necessary to construct and operate the proposed project, [and] has the authority to exercise eminent domain authority to obtain such access."[3] IDAPA 37.03.08.045.01.c.i (alterations by Rangen). That paragraph of the Appropriation Rules actually reads, in its entirety, as follows:

> The applicant shall have legal access to the property necessary to construct and operate the proposed project, has the authority to exercise eminent domain authority to obtain such access, or in the instance of a project diverting water from or conveying water across land in state or federal ownership, has filed all applications for a right-of-way. Approval of applications involving Desert Land Entry or Carey Act filings will not be issued until the United States Department of Interior, Bureau of Land Management has issued a notice classifying the lands suitable for entry; and

IDAPA 37.03.08.045.01.c.i. Rangen's addition of a bracketed "and" in its quotation of the rule misstates the law and is nonsensical. Nothing about this rule indicates that it applies only to water districts or other public entities; all applications to appropriate water are subject to the good faith analysis in Rule 045.01.c. If an applicant were required to show both legal access *and* eminent domain authority before the Director would be required to find good faith, the Rule would apply only to governmental entities. This is an absurd result. Nor is it a natural reading of the rule. There are three primary clauses separated by commas, with the word "or" appearing at the beginning of the last primary clause. The more natural, and correct, way of reading the Rule is that an applicant may prove good faith by showing legal access *or* eminent domain authority. In light of this, Rangen's subsequent focus on actual legal access is misplaced and irrelevant.

---

[3] In its Reply Brief, Rangen quotes the same rule with "[or]" instead of "[and]."

Finally, Rangen appears to argue that the eminent domain statute grants the Districts "possible" legal access, but not "actual" legal access, which according to Rangen, would require a court order authorizing the use of the statutory eminent domain power. Rangen again quotes and emphasizes the portion of the Appropriation Rule requiring that an applicant "shall have legal access to the property," while downplaying the alternative requirement specifying that "authority to exercise eminent domain authority" is sufficient. IDAPA 37.03.08.045.01.c.i. Rangen suggests that the Districts failed to introduce evidence that each of the individual ground water districts, which together comprise the Districts, properly adopted resolutions to authorize the initiation of a condemnation proceeding against Rangen at duly noticed and properly held meetings.

Despite the fact that the Director did not address Rangen's speculation arguments, the district court held that "[t]he fact that the Districts have the express statutory authority to exercise the power of eminent domain for the condemnation of private property for easements, rights-of-way, and other rights of access to property necessary to the exercise of their mitigation powers is sufficient for the purposes of a speculation analysis." Because there is no dispute that the Districts intended to apply the water to the beneficial use of mitigation, and because the Districts have statutory authority to condemn Rangen's real property to obtain legal access for mitigation purposes, we affirm the district court's determination that the Districts' application is not speculative.

## F. The district court did not err in determining that the Director's final order prejudiced the Districts' substantial rights.

As stated in the standard of review section, an agency decision will not be set aside unless one of the exceptions in Idaho Code section 67-5279(3) applies and the petitioner shows that its substantial rights have been prejudiced. I.C. § 67-5279(4). Here, the Districts petitioned for judicial review after the Director denied their permit in a final order. Accordingly, the Districts were required to show that their substantial rights had been prejudiced by the final order. The district court concluded that the Director's final order prejudiced the Districts' substantial rights relating to the ability to pursue the appropriation of unappropriated water and in their application for permit.

Rangen did not address this issue in its opening brief. Instead, Rangen argued that its own substantial rights were prejudiced by the reversal of the Director's decision. Rangen cites no law

15

in the single paragraph comprising this subsection of its opening brief, and it does not refer to this issue in its reply brief. Rangen fails to explain the legal relevance of any prejudice it suffers from the reversal of the Director's decision, other than to reiterate the basic theme of its brief that the Districts should not get the unappropriated water at issue because Rangen has historically used it. Rangen asserts that if the Districts' application is approved, "Rangen will be in the exact same position as before it filed its Delivery Call, injured and impacted without any meaningful mitigation."

This is untrue. Prior to Rangen's delivery call, the headwaters of Billingsley Creek were unappropriated and Rangen had no legal right to divert and use that water. If the Districts' application is approved, Rangen will presumably acquire the right to use the Billingsley Creek headwaters as a result of the Districts' fulfillment of an approved mitigation plan. It is true that if the application is denied, then Rangen's own water right, with a later priority date than the Districts' application, will entitle Rangen to legally divert and use the water from Billingsley Creek and the Districts will be required to provide an alternative source of mitigation or face curtailment. However, a basic application of the prior appropriation doctrine yields the inescapable conclusion that if the Districts' application is complete and valid, the Districts' claim to the water is superior to Rangen's claim. It is irrelevant whether Rangen's substantial rights are prejudiced by the district court's order setting aside the Director's final order.[4] The analysis inquiring whether a substantial right is prejudiced applies to a petitioner seeking judicial review of an agency decision. Rangen did not seek judicial review of the Director's final order here.

Rangen perhaps intended instead to argue that the district court erred in concluding that the Director's final order prejudices the Districts' substantial rights. But because Rangen did not raise this issue in its opening brief on appeal, it is not properly before the Court and will not be considered. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010). The district court's ruling on this issue must stand because it has not been appealed.

## V.
## CONCLUSION

We affirm the district court's decision setting aside the Director's final order denying the Districts' application for permit. Costs to Respondents.

---

[4] Nor is it necessarily true that Rangen's substantial rights were in fact prejudiced by the district court's decision. Because the issue is irrelevant, we do not examine it here.

Justices EISMANN, BURDICK, and HORTON, and Justice Pro Tem WALTERS CONCUR.